**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TIMOTHY THOME, individually and on behalf of all others similarly situated,** ) ) ) | |
| ) | **Case No. 1:19-cv-06256** |
| **Plaintiff,** ) | |
| ) | **Hon. Matthew F. Kennelly** |
| **v.** ) | |
| ) | |
| **NOVATIME TECHNOLOGY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com


Brandon M. Wise
Peiffer Wolf Carr Kane & Conway, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314.833.4825
bwise@peifferwolf.com

**COUNSEL FOR PLAINTIFF AND THE CLASS**

## TABLE OF CONTENTS

Page

I. **INTRODUCTION**..................................................................................................1

II. **RELEVANT BACKGROUND** ...........................................................................3

    A. The Biometric Information Privacy Act. ......................................................3

    B. Procedural History ........................................................................................4

III. **TERMS OF THE PROPOSED SETTLEMENT** ..............................................6

    A. Settlement Class..........................................................................................6

    B. Settlement Fund. .........................................................................................7

    C. Confession of Judgment..............................................................................7

    D. Assignment. ................................................................................................8

    E. Prospective Relief .......................................................................................8

    F. Methods and Form of Notice ......................................................................8

    G. Exclusion and Objection Procedures .........................................................9

    H. Release of Liability......................................................................................9

IV. **CLASS ACTION SETTLEMENT PROCEDURE** .........................................10

V. **THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23** ........................................................................................12

VI. **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE** ........21

    A. The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval. ..................................................................................23

        i. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor)................................................24

        ii. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor)......................................................................................................31

        iii. The Reaction of the Class Has Been Positive (Third Factor) ...................32

iv.      Competent Class Counsel Endorse This Agreement (Fourth Factor)........32

v.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor) ...............................................................33

B.      The Settlement Was the Result of Arm's-Length Negotiations, Without Any Hint of Collusion...........................................................................................................33

VII.     **THE PROPOSED CLASS NOTICE SHOULD BE APPROVED.** ...........................34

VIII.    **PRELIMINARY APPROVAL OF PLAINTIFF'S COUNSEL'S FEES AND COSTS IS APPROPRIATE** ........................................................................................................35

IX.     **CONCLUSION** .............................................................................................................36

<u>**TABLE OF AUTHORITIES**</u>

**Cases**           **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................................. 2, 21

*Amchem Prods., Inc.* v. *Windsor*,
521 U.S. 591 (1997)................................................................................ 12, 16, 19

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ......................................................... 22, 27, 32, 34

*Barragan v. Evanger's Dog & Cat Food Co.*,
259 F.R.D. 330 (N.D. Ill. 2009)............................................................... 14

*Boeing Co. v. VanGemert*,
444 U.S. 472 (1980)................................................................................ 36

*Campbell v. Advantage Sales & Mktg. LLC*,
No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ............................ 35

*Campos v. Midwest Time Recorders, Inc.*,
No. 2019-CH-07229 (Cir. Ct. Cook Cty. Jan. 2, 2020) ............................ 28

*Carroll v. Crème de la Crème, Inc.*,
2017-CH-01624 (Cir. Ct. Cook Cty.) ...................................................... 25

*Castillo v. Noodles & Co.*,
No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)............................ 35

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996)............................................................... 33

*Cook v. McCarron*,
92 C 7042, 1997 WL 47448 (N.D. Ill. Jan. 30, 1997) ............................ 22

*De La Fuente v. Stokely-VanCamp, Inc.*,
713 F.2d 225 (7th Cir. 1983) ............................................................... 15

*Donovan v. Estate of Fitzsimmons*,
778 F.2d 298 (7th Cir. 1985) ............................................................... 31

*Driver v. AppleIllinois*,
265 F.R.D. 293 (N.D. Ill. 2010).............................................................. 20

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ............................................................ 27, 30

*Figueroa v. Kronos Inc.*,
    No. 19 C 1306, 2020 WL 1848206 (N.D. Ill. Apr. 13, 2020)................................... 28

*Florin v. Nationsbank of Ga., N.A.*,
    24 F.3d 560 (7th Cir. 1994) ............................................................ 35

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ........................................................ 23, 32

*GMAC Mortg. Corp. of Pa. v. Stapleton*,
    236 Ill. App. 3d 486 (1st Dist. 1992) .................................................... 20

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ............................................................ 29

*Golon v. Ohio Savs. Bank*,
    No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ................................... 19

*Heard v. Becton, Dickinson & Co.*,
    No. 19 C 4158, 2020 WL 887460 (N.D. Ill. Feb. 24, 2020)..................................... 28

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ...................................................... 24

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001)............................................................ 36

*In re Chocolate Confectionary Antitrust Litig.*,
    289 F.R.D. 200 (M.D. Pa. 2012)........................................................ 18

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 330 (N.D. Ohio 2001) ...................................................... 23

*In re Prudential*,
    148 F.3d 283 (3d Cir. 1998)............................................................ 36

*In re Traffic Exec. Ass'n-E. R.R.*,
    627 F.2d 631 (2d Cir. 1980)............................................................ 23

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ....................................................... passim

*Kaufman v. American Express Travel Related Servs. Co., Inc.*,
 264 F.R.D. 438 (N.D. Ill. 2009) ............................................................. 12

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
 Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .......................... 23

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
 No. 10 Civ. 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014).................................... 13, 14, 19

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
 No. 00 Civ. 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ................................. 17

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
 834 F.2d 677 (7th Cir. 1987) ............................................................. 30

*Marshall v. Lifetime Fitness, Inc.*,
 2017-CH-14262 (Cir. Ct. Cook Cty.) ..................................................... 25

*Matter of Cont'l Ill. Secs. Litig.*,
 962 F.2d 566 (7th Cir. 1992) ............................................................. 35

*McCue* v. *MB Financial, Inc.*,
 No. 15 Civ. 0988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015)................................. 18

*McKinnie* v. *JP Morgan Chase Bank, N.A.*,
 678 F. Supp. 2d 806 (E.D. Wis. 2009)..................................................... 18

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
 762 F.2d 1093 (D.C. Cir. 1985) ........................................................... 21

*Moreno v. Napolitano*,
 No. 11 Civ. 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014)............................. 15

*Muniz v. Workwell Techs., Inc.*,
 2019-CH-04061 (Cir. Ct. Cook Cty.) ..................................................... 26

*Muro v. Target Corp.*,
 580 F.3d 485 (7th Cir. 2009) ............................................................. 15

*Namuwonge v. Kronos, Inc.*
 418 F. Supp. 3d 279, 285-86 (N.D. Ill. 2019)............................................... 28

*Neals v. PAR Tech Corp.*,
 419 F. Supp. 3d 1088 (N.D. Ill. 2019) ..................................................... 28

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
    231 F.R.D. 280 (N.D. Ill. 2005) ................................................................. 15

*Patterson v. Stovall*,
    528 F.2d 108 (7th Cir. 1976) ............................................................. 21, 27

*Redman v. RadioShack Corp.*,
    763 F.3d 622 (7th Cir. 2014) ..................................................................... 36

*Retired Chicago Police Assoc. v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ........................................................................ 16

*Reynolds v.Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ..................................................................... 31

*Robles v. Corporate Receivables, Inc.*,
    220 F.R.D. 306 (N.D. Ill. 2004) ................................................................. 17

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ................................................................... 14

*Rosenbach v. Six Flags Entm't Corp.*,
    2019 IL 123186 ........................................................................................... 4

*Rubenstein v. Republic Nat'l Life Ins. Co.*,
    74 F.R.D. 337 (N.D. Tex. 1976) ................................................................ 32

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) ................................................................. 15

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................... 27, 28

*Seiden v. Nicholson*,
    72 F.R.D. 201, 208 (N.D. Ill. 1976) ........................................................... 31

*Smith v. Sprint Commc'ns Co.*,
    387 F.3d 612 (7th Cir. 2004) ..................................................................... 12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ..................................................................... 24

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
    No. 02 Civ. 1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ................... 35

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
 309 F.3d 978 (7th Cir. 2002) ............................................................. 21

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
 2020 WL 1330494 (Ill. App. Ct. Mar. 20, 2020) ................................... 26

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) .................................................................. 36

*Zolkos v. Scriptfleet, Inc.*,
 No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ............ 12

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA"),
 740 ILCS 14/1, *et seq.* .............................................................. 1, 4, 14, 29

**Other Authorities**

5 James Wm. Moore, Moore's Federal Practice,
 (3d ed. 2001) ...................................................................................... 37
Ill. House Transcript,
 2008 Reg. Sess. No. 276. ....................................................................... 3
Manual for Complex Litigation
 § 30.41 (3d ed. 1995) ..................................................................... 22, 23

**Rules**

Fed. R. Civ. P. 23 ......................................................................... passim

**Treatises**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*),
 § 11.22 *et seq.* (4th ed. 2002) ......................................................... passim

## I.     INTRODUCTION

Plaintiff Timothy Thome ("Thome" or "Plaintiff") brought a putative class action against Defendant NOVAtime Technology, Inc. ("NOVAtime" or "Defendant") asserting class claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* BIPA requires entities that collect protected biometric data—like fingerprints and handprints—to inform individuals that the data is being collected, by whom, for what purposes, and to receive written consent before such data is collected. Numerous other class action lawsuits have been filed under BIPA against employers for collecting employees' biometric identifiers and/or biometric information (hereinafter referred to as "biometric data") through biometric timeclocks or other devices, including a few that have been before this Court. Unlike most cases brought by employees against employers, however, this matter was brought against the vendor itself—NOVAtime—who Plaintiff alleges collected his (and thousands of other Illinois employees') fingerprints and hand scans when using NOVAtime's timekeeping devices and related software at work.[1]

After particularly intense negotiations that required two formal mediation sessions with an experienced mediator, Judge Morton Denlow (Ret.) of JAMS in Chicago, the Parties reached a proposed Settlement on behalf of approximately 62,078 Settlement Class Members in the total amount of $14,100,000.00. *See* Class Action Settlement Agreement and Release ("Settlement"), attached hereto as Exhibit 1.[2] The Settlement provides that NOVAtime will enter into a Confession of Judgment and an assignment of rights for the total amount of $14,100,000.00 of which Class Members will be provided the ability to receive a share of the proposed $4,100,000.00, non-

---

[1] This lawsuit asserts claims against an entity—the timeclock provider—that are most often overlooked or released in employer BIPA class settlements for no evident additional value at all, with few exceptions. *See, e.g., Johnson v. Resthaven d/b/a Providence Life,* No. 2019-CH-1813 (Cir. Ct. Cook Cty.).

[2] Unless otherwise defined herein, all capitalized terms used herein will have the same meaning as defined in the Settlement Agreement.

1

reversionary Settlement Fund paid by NOVAtime. Each Settlement Class Member who files a valid Claim Form will get significant monetary relief from these claims and will be entitled to monetary payment(s) on a *pro rata* basis of the Settlement Fund, as described in detail herein. Critically, they will retain any BIPA claims they have against their employers, including in any on-file cases. In short, this Settlement delivers significant value to Settlement Class Members, without diminishing their rights against employers who violate Illinois law.

Plaintiff seeks preliminary approval of the Settlement, certification of a settlement class, appointment of class counsel, and approval of the proposed Claim Form and methods of class Notice. This Motion describes in detail the reasons why preliminary approval is in the best interests of the Settlement Class and is consistent with Rule 23 of the Federal Rules of Civil Procedure. As discussed in more detail below, the most important consideration in evaluating the fairness of a proposed class action settlement is the strength of the plaintiff's case on the merits balanced against the relief obtained in the settlement. *See Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.*, Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012). While Plaintiff believes he could secure class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding BIPA, and NOVAtime is prepared to vigorously defend this case. The terms of the Settlement, which includes a Settlement Fund providing Settlement Class Members the ability to receive meaningful cash compensation, along with obtaining NOVAtime's acknowledgment that it has implemented procedures to comply with BIPA, meet and exceed the applicable standards of fairness. Accordingly, the Court should preliminarily approve the Settlement so that Settlement Class Members can receive notice of their rights and the claims administration process may begin.

2

## II. RELEVANT BACKGROUND

### A. The Biometric Information Privacy Act.

While the Court is familiar with BIPA, Plaintiff provides a brief recounting here of the history and requirements of BIPA to give further context to the reasonableness of the proposed Settlement. In the early 2000's, a company called Pay By Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations. (Dkt. No. 45 at ¶¶ 22-23.) The premise was simple: swipe your credit card once, let the machine scan your index finger, and the next time you buy groceries or gas, you won't need to bring your wallet—you'll just need to provide your fingerprint. But by the end of 2007, Pay By Touch had filed for bankruptcy. (*Id*. at ¶ 23.) When Solidus, Pay By Touch's parent company, began shopping Illinois consumers' fingerprints as an asset to its creditors, a public outcry erupted. Though the bankruptcy court eventually ordered Pay By Touch to destroy its database of fingerprints, the Illinois legislature took note of the grave dangers posed by the irresponsible collection and storage of biometric data without any protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA, in 2008, to provide individuals recourse when companies failed to appropriately handle their biometric data in accordance with the statute. (Dkt. No. 45 at ¶ 24.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first":

> (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;

3

(2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and,

(3) receives a written release executed by the subject of the biometric identifier or biometric information ….

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle individuals' biometric data. For example, BIPA requires companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric data, 740 ILCS 14/15(a), and inform and receive consent from the individual before disclosing, re-disclosing, or otherwise disseminating their biometric data, 740 ILCS 14/15(d). To enforce the statute, BIPA provides for a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 for negligent violations—or $5,000 for reckless or intentional violations—plus costs and reasonable attorneys' fees. *See* 740 ILCS 14/20.

As the Illinois Supreme Court assessed the legislature's intent in passing BIPA, the statute:

> vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent…. These procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused. When a private entity fails to adhere to the statutory procedures … the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere 'technicality.' The injury is real and significant.

*Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 34 (internal citations and quotations omitted).

**B.    Procedural History.**

Plaintiff filed his original Class Action Complaint in the Circuit Court of Cook County on August 14, 2019, and his Amended Class Action Complaint on January 23, 2020, alleging that his employer used NOVAtime's biometric timeclocks to authenticate and monitor his and other

Illinois employees' working hours. (Dkt. No. 45 at ¶¶ 47-48.) Plaintiff alleges that he—and other employees—were required to scan their fingerprints [or hand geometry] on NOVAtime's biometric timeclocks in order to clock in and out of work. (*Id*. at ¶¶ 48, 50.) What Plaintiff did not know, and NOVAtime did not notify him of, was that NOVAtime *itself* collected his biometric data. (*Id*. at ¶¶ 49, 77, 86, 88, 89, 96.) Besides failing to notify individuals that it was collecting biometric data in the first place, NOVAtime failed to seek or secure informed written consent. (*Id*. at ¶¶ 53, 88, 98.) Plaintiff further alleges that NOVAtime failed to develop or comply with any written policy for permanently destroying employees' biometric data. (*Id*. at ¶¶ 52, 79, 80.) NOVAtime denies that it has engaged in any wrongdoing.

On September 19, 2019, NOVAtime removed the matter to federal court. (Dkt. No. 1.) On October 10, 2019, NOVAtime filed a motion to dismiss, which was fully briefed by the Parties. (Dkt. Nos. 14, 24, 38.) On November 18, 2019, NOVAtime filed an objection to Rule 26(a)(1) initial disclosures and a motion to stay discovery. (Dkt. No. 20.) On January 9, 2020, the Court denied NOVAtime's motion to dismiss as to Counts 1 and 2, noting that Section 15(b) does not only apply in the context of an employment setting nor to just active collectors of biometric data, that Plaintiff sufficiently alleged NOVAtime did not make available to the public a retention schedule and destruction guidelines under Section 15(a), but granted it as to Count 3 of the Complaint with leave to amend, noting that Plaintiff's allegations pursuant to Section 15(d) regarding disclosure to third parties was too conclusory and unsupported by facts. (Dkt. No. 44.) On January 23, 2020, Plaintiff filed an Amended Class Action Complaint. (Dkt. No. 45.) On February 13, 2020, NOVAtime filed a motion to stay discovery (Dkt. No. 47), a motion to extend time to answer or respond to the amended complaint (Dkt. No. 49), and a motion for leave to file a motion to strike class allegations (Dkt. No. 51). The Parties also exchanged Rule 26(a)(1) initial

disclosures and Plaintiff propounded written discovery, including interrogatories and requests for production of documents to NOVAtime, which NOVAtime responded to on March 16, 2020. On February 19, 2020, the Court denied NOVAtime's motion for leave to file a motion to strike class allegations ruling that it was forfeited under Rule 12(f) and was also premature given the absence of a current motion for class certification. (Dkt. No. 52.) The Court also denied NOVAtime's motion to stay discovery. (Dkt. No. 52.) On February 26, 2020, NOVAtime filed its answer and affirmative defenses. (Dkt. No. 53.) On April 29, 2020, the Court stayed the matter through July 1, 2020, to provide the Parties an opportunity to engage in mediation. (Dkt. No. 62.)

Amid the COVID-19 pandemic and while most matters were stayed or suspended, the Parties nevertheless sought to move the case forward and began exploring settlement and agreed that a formal mediation would be productive. The Parties exchanged additional discovery in advance of the mediation about the estimated size of the putative settlement class, the claims to be resolved, and all applicable insurance policies. On June 29, 2020, the Parties engaged in a formal, full-day mediation with an experienced BIPA mediator, Judge Morton Denlow (Ret.) of JAMS of Chicago. The mediation was not successful, but the Parties agreed that progress could still be made on a future mediation date. The Parties again engaged in a second formal mediation with Judge Denlow on July 8, 2020, and the extensive negotiations culminated in the Settlement for which the Parties now seek preliminary approval, attached hereto as Exhibit 1.

## III. TERMS OF THE PROPOSED SETTLEMENT

The terms of the Settlement are briefly summarized here:

### A. Settlement Class.

The proposed "Settlement Class" includes all individuals who were enrolled in a NOVAtime biometric timekeeping system and subsequently used a NOVAtime timeclock that

utilized a fingerprint, hand-geometry, or other biometric verification method in the State of Illinois between August 14, 2014 and the date of the Preliminary Approval Order. (Exhibit 1, § 1.30.)

**B.    Settlement Fund.**

The proposed Settlement will establish a common fund in the total amount of $14,100,000.00 to be paid pursuant to the terms of the Settlement. NOVAtime will not be required to provide settlement funding that exceeds $4,100,000.00. NOVAtime confirms a letter has been sent to Axis Insurance Company ("Axis") demanding Axis to contribute the policy limits of its policies, including Axis Policy No. MLN635765/01/2019 and Axis Policy No. P-001-000247286-01 and that Axis has denied coverage. Accordingly, NOVAtime and its parent company, Ascentis Corporation, agree to a Confession of Judgment in the total amount $14,100,000.00 and an assignment of their rights under all known and unknown insurance policies including, but not limited to the Axis and CNA policies, and assignment of any contract or tort causes of action whether grounded in common law or statute, arising from CNA's and Axis's denial of coverage, as set forth in § 1.10 of the Settlement. The Confession of Judgment will be filed with the Court. (Exhibit 1, § 1.32.)

**C.    Confession of Judgment.**

NOVAtime and its parent company, Ascentis Corporation, agree to a Confession of Judgment in the total amount of $14,100,000.00. NOVAtime confirms a letter was sent to Axis Insurance Company on July 13, 2020, demanding Axis to contribute the policy limits of its policies. Because CNA and Axis have both failed to provide respective coverage, NOVAtime and Ascentis Corporation agree to a Confession of Judgment in the total amount of $14,100,000.00 and an assignment of all of their rights under their insurance policies including, but not limited to, Axis Policy No. MLN635765/01/2019 and Axis Policy No. P-001-000247286-01, and all other

applicable Axis and CNA policies, and assignment of any contract or tort causes of action, whether grounded in common law or statute, arising from Axis's denial of coverage, as set forth in § 1.10 of the Settlement. (Exhibit 1, § 1.9.)

      **D.**     **Assignment.**

NOVAtime and Ascentis Corporation, on the Effective Date, assign to Plaintiff, as representative of and on behalf of the Settlement Class, to the fullest extent permitted by law, all of their claims against and rights to payment under Axis Policy No. MLN635765/01/2019 and Axis Policy No. P-001-000247286-01, from which Plaintiff will seek to recover, as set forth in § 1.32 of the Settlement. (Exhibit 1, § 1.10.)

      **E.**     **Prospective Relief.**

NOVAtime agrees that (a) on or before the Effective Date, it shall verify that it has made available on its website NOVAtime's written policy establishing a retention schedule and guidelines for permanently destroying biometric data, and (b) to comply with its written retention schedule and guidelines. NOVAtime shall also implement a notice and consent process that informs the employee-user in writing of NOVAtime's finger-scan or hand-scan timeclocks of (i) the biometric data that is being collected, stored, and used by the employer and/or NOVAtime, (ii) the purposes and length of term that biometric data is being collected, stored, and used, (iii) obtain a written release to the collection, storage and use of biometric data in order to enroll in NOVAtime's biometric timeclocks, and (iv) obtain consent for the disclosure of biometric data to any third party. (Exhibit 1, § 2.2.)

      **F.**     **Methods and Form of Notice.**

To reach as many potential Class Members as possible, the Settlement Administrator will provide the best notice practicable, including: (a) direct notice via First Class U.S. Mail and e-mail

substantially in the same form as Exhibit C, and (b) internet notice via the Settlement Website that will be developed, hosted, administered, and maintained by the Settlement Administrator containing the notice substantially in the same form as <u>Exhibit D</u> of the Settlement. (Exhibit 1, § 4.2(a)-(b).)

### G. Exclusion and Objection Procedures.

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections (*see* <u>Exhibit 1</u>, §§ 4.2(c), 4.3) will be identified in the Notices provided to the Settlement Class. The Notices inform the Settlement Class that the Final Approval Hearing will be their opportunity to appear and have their objections heard. The Notices also inform the Settlement Class that they will be bound by the Release contained in the Settlement unless they exercise their right to exclusion in a timely manner. (Exhibit 1, § 4.3.)

### H. Release of Liability.

In exchange for the relief described above, NOVAtime and related entities will be released from claims relating to the collection, capture, storage, use, profit from, possession, disclosure, and/or dissemination of biometric data, including BIPA claims. (Exhibit 1, §§ 1.24, 1.25.) Released Parties shall not include: (a) any entity that manufactured, sold, or otherwise provided NOVAtime with any finger-scan and/or hand-scan technology (including software and hardware), (b) NOVAtime's clients, including but not limited to, the Settlement Class's employers or other entities to whom NOVAtime leased, sold, or otherwise provided finger-scan and/or hand-scan timeclocks, and any service involving finger and/or hand data related to such timeclocks, (c) Axis Insurance Company and/or those Underwriters that issued the Axis Policy No. MLN635765/01/2019 and Axis Policy No. P-001-000247286-01 as well as Axis's reinsurers and

CNA. To the extent any of the Ptarmigan reinsurers are the same as Axis reinsurers, such reinsurers are not released. (Exhibit 1, § 1.25.)

## IV.  CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.  Preliminary approval of the proposed settlement;

2.  Dissemination of mailed and/or e-mailed notice of the settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22 *et seq.* (4th ed. 2002). This process safeguards Settlement Class Members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. With this Motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement, approving the proposed Notice and ordering its distribution.

Plaintiff respectfully proposes that the Court issue an order setting the following schedule ("Preliminary Approval Order"):

1.  **Notice Date:** Within 14 calendar days of entry of the Preliminary Approval Order, Notice shall be sent via all available methods and form as described above and more thoroughly described in the Settlement (substantially in the form of Exhibits C and D to the Settlement). For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the Notice mailing to be re-mailed to those Settlement Class Members. All Claim Forms (substantially in the form of Exhibit A of the Settlement) must be postmarked and/or submitted on the Settlement Website within 63 days following the Notice Date. (Exhibit 1, §§ 1.5, 1.6, 1.20.)

2.  **Deadline for Opt-Outs/Objections:** Each opt-out and/or objection must be postmarked, e-mailed and/or filed with the Court within 42 days after the Notice Date. (Exhibit 1, § 1.21.)

3.   **Submission of Papers in Support of an Incentive Award, Settlement Administration Expenses, and Attorneys' Fees and Expenses:**  Must be filed no later than seven days prior to the date of the Final Approval Hearing.

4.   **Submission of Papers in Support of Final Approval of Settlement:**  Must be filed no later than seven days prior to the date of the Final Approval Hearing.

5.   **Final Approval Hearing:**  Will occur approximately 100 days after entry of the Preliminary Approval Order, or such other date as ordered by the Court.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing Notice, opting out of the Settlement, submitting objections to the proposed Settlement, and submitting a Claim Form will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process under the Settlement.

|     | *Event* | *Timing* |
| --- | --- | --- |
| 1. | Motion for Preliminary Approval Filed | October 12, 2020 |
| 2. | NOVAtime's Counsel to Provide Class List to the Settlement Administrator | Within 3 days after the entry of the Preliminary Approval Order |
| 3. | Settlement Administrator to Issue Class Notice | Within 14 calendar days after entry of the Preliminary Approval Order |
| 4. | Deadline for Opting Out or Objecting to Settlement | 42 days after the Notice Date |
| 5. | Deadline for Submitting a Claim Form | 63 days after the Notice Date. |
| 6. | Final Approval Hearing | Approximately 100 days after preliminary approval |
| 7. | Effective Date | One business day following the later of: (i) if there are no objectors, the date of Final Approval; (ii) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order, (iii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order |

| | | |
|---|---|---|
| | | without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (iv) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of final dismissal of any appeal or the final dismissal of any proceeding on appeal with respect to the Final Approval Order. |
| 8. | NOVAtime to Fund the Settlement | $150,000.00 within 14 calendar days of the entry of the Preliminary Approval Order to the Escrow Account for the purpose of funding Settlement Administration Expenses. Within (7) calendar days of the Effective Date, the remaining balance of the Settlement Fund of $3,950,000.00 to the Escrow Account. |
| 9. | Settlement Administrator to Distribute Funds to Class Members | Within 28 calendar days of the Effective Date |

## V. THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23

"Before addressing the substantive provisions of the Settlement Agreement, the Court must first determine whether the proposed class can be certified" for settlement purposes. *Kaufman v. American Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) (citation omitted). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) (citing *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004)); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

12

For settlement purposes only, the Parties have agreed that the Court should make preliminary findings and enter an Order granting provisional certification of the Settlement Class and appoint Plaintiff and his counsel to represent the Settlement Class. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]… An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether the proposed Settlement Class satisfies the requirements of Rule 23. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class.

Rule 23(a)(1). The first requirement asks whether the proposed class is so numerous that joinder is impracticable. Although the rule provides no firm number, courts have held that numerosity can be satisfied where more than 40 putative class members exist. *See, e.g.*, *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10 Civ. 1899, 2014 WL 642092, at *5 (N.D. Ill. Feb. 19, 2014). Here, approximately 62,078 individuals comprise the putative Rule 23 class. Accordingly, Rule 23(a)(1)'s numerosity requirement is met.

Rule 23(a)(2). The next question is whether there are questions of law or fact common to the class. "Commonality requires that there be at least one question of law or fact common to

the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Kurgan,* 2014 WL 642092 at *6.

In this case, all members of the proposed Settlement Class share a common statutory BIPA claim arising out of standardized conduct by NOVAtime: the alleged collection, storage, use, and dissemination of Settlement Class Members' biometric data without obtaining informed written consent or providing the required disclosures. Proving a BIPA violation would require the resolution of some of the same factual and legal issues, including: (1) whether NOVAtime collected, captured, or otherwise obtained Plaintiff's and the Settlement Class's biometric identifiers or information (as defined by 740 ILCS 14/10); (2) whether NOVAtime properly informed Plaintiff and the Settlement Class of its purposes for collecting, using, and storing their biometric identifiers or information, 740 ILCS 14/15(b); (3) whether NOVAtime obtained a written release to collect, use, and store Plaintiff's and the Settlement Class's biometric identifiers or information, *id*.; (4) whether NOVAtime developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers or information, 740 ILCS 14/15(a); and (5) whether NOVAtime's alleged violations of BIPA were committed negligently or recklessly, 740 ILCS 14/20 (providing $1,000 in damages per negligent violation or $5,000 in damages per reckless or intentional violation).

Rule 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario*, 963 F. 2d at 1018

14

(quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente,* 713 F.2d at 232).

Plaintiff's claims are typical of the claims of other Settlement Class Members because they arise from the same course of action by NOVAtime which applies to all Settlement Class Members: NOVAtime's alleged failure to properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their biometric data was allegedly being collected, stored, disseminated and used; the alleged failure to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data; and the alleged failure to obtain a written release and/or consent prior to collecting, storing, using, and disseminating Plaintiff's and Settlement Class Members' biometric data. While there may be factual differences between claims of the Plaintiff and those of other putative Settlement Class Members, their claims are nevertheless based on the same legal theory. *Moreno v. Napolitano*, No. 11 Civ. 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of

fact") (internal quotations omitted). Thus, Plaintiff's claims are clearly typical of those of the claims of other Settlement Class Members.

    Rule 23(a)(4). The requirement that "the representative parties . . . fairly and adequately protect the interests of the class . . . serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20. Because of the unique nature of the class action device, "[t]he adequacy-of-representation requirement 'is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 343 (quoting *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)) (further internal quotations and citation omitted).

     "A class representative must . . . be part of the class and possess the same interest and suffer the same injury as the class members." *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (internal quotations and citation omitted). "This requires the district court to ensure that there is no inconsistency between the named parties and the class[,] . . . [because a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal quotations and citations omitted).

    The proposed Class Representative, Timothy Thome, used a NOVAtime finger-scan and/or hand-scan timeclock deployed at a NOVAtime client work site but NOVAtime failed to comply with BIPA's requirements during the class period, and his claims are based on the same alleged

BIPA violations as the rest of the proposed Settlement Class. He has shown his commitment to vigorously prosecuting the Action by assisting Plaintiff's counsel in preparing the Complaint, maintaining contact with Class Counsel, and actively participating in settlement negotiations. The proposed Class Representative has also provided invaluable information and documents, and otherwise assisted Class Counsel in understanding Plaintiff's claims and NOVAtime's defenses. *Wilkins*, 2015 WL 1234738 at *12 (adequacy of representation satisfied where Plaintiff demonstrated she was sufficiently interested in the outcome of the case because she sat for her deposition and responded to written discovery). This qualifies Plaintiff as a "conscientious representative plaintiff" and satisfies the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004).

The Class Representative does not have any interests antagonistic to the Settlement Class. Rather, he has the same interests and has suffered the same damages from NOVAtime's alleged BIPA violations as the proposed Class Members. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 Civ. 5755, 2000 WL 1774091, at *5-6 (N.D. Ill. Dec. 1, 2000) (no antagonistic interest where plaintiff alleged same violation and remedy as the rest of the class). Likewise, Class Counsel have fairly and adequately protected the interests of the Settlement Class. Plaintiff's attorneys are highly experienced and have successfully acted as representative counsel in numerous complex class actions, in federal and state courts in the Northern District of Illinois and throughout the United States, including several successfully resolved and active class actions on behalf of other individuals aggrieved under BIPA with virtually identical claims. *See* <u>Exhibits 2 & 3</u>, Declaration of Ryan F. Stephan ("Stephan Decl."), Declaration of Brandon M. Wise ("Wise Decl."), Attachment A-1 (Stephan Zouras, LLP Firm Resume), Attachment A-2 (Peiffer Wolf Carr Kane & Conway, APLC Firm Resume). "Plaintiffs' [C]ounsel have invested substantial time and

resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Data Servs.*, 270 F.R.D. at 344 (citation omitted).

Class Counsel invested considerable time and resources, including fully briefing NOVAtime's motion to dismiss, issuing discovery, preparing for and delivering prevailing arguments relating to NOVAtime's motion to stay discovery and motion for leave to file a motion to strike class allegations, preparing for mediation, reviewing NOVAtime's mediation submissions, and engaging in extensive negotiations before the Settlement was reached. Indeed, this exchange of information, the use of a mediator, and Plaintiff's independent investigation, as well as arm's-length negotiations with NOVAtime, demonstrate Class Counsel's pursuit of the interests of the class and their determination to avoid even an appearance of collusion with NOVAtime. *See McCue* v. *MB Financial, Inc.*, No. 15 Civ. 0988, 2015 WL 1020348, at *2 (N.D. Ill. Mar. 6, 2015) (citing *McKinnie* v. *JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009)). In short, Named Plaintiff and his counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied.

Rule 23(b)(3). Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15,

1999). When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

Here, there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members so as to render a class settlement appropriate. The common questions resulting from NOVAtime's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by NOVAtime. Plaintiff and putative Class Members allege that they used a NOVAtime finger-scan and/or hand-scan timeclock deployed at a NOVAtime client work site but NOVAtime failed to comply with BIPA's requirements. The question of whether NOVAtime violated BIPA and of the right of Plaintiff to statutory damages can, for provisional certification purposes, be determined for the entire Settlement Class in a single adjudication, without considering individualized issues. *See Kurgan*, 2014 WL 642092 at *9 ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for purposes of settlement class provisional certification.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factor shows that a class action is the preferred procedure in this case. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois, LLC,* 265 F.R.D. 293, 304 (N.D. Ill. 2010) (quoting *Amchem*, 521 U.S. at 615).

This case is particularly well-suited for class treatment because the claims of Plaintiff and the proposed Settlement Class Members involve identical alleged violations of a state statute for the alleged unauthorized collection, storage, use, and dissemination of Class Members' biometric data while allegedly failing to comply with BIPA. Absent a class action, most members of the Settlement Class would find the cost of litigating their claims – each of which is statutorily limited to $1,000 per negligent violation of BIPA and $5,000 per reckless violation of BIPA – to be prohibitive. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation. Moreover, because the Action will now settle, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Nor should the Court "judge the legal and factual questions" regarding certification of the proposed Settlement Class by the same criteria as a proposed class being adversely certified. *See GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992).

A class action is the superior method of resolving large-scale claims if it will "achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. In sum, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and thus Rule 23 certification of the proposed Settlement Class for purposes of settlement is appropriate.

## VI. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198-99); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). The decision to approve a proposed settlement is committed to the Court's sound discretion. *See, e.g.*, *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve a proposed settlement] within the sound

21

discretion of the trial judge who can be sensitive to the dynamics of the situation"). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual for Complex Litigation (3d ed.) § 30.41, at 236 (1995). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

At the preliminary approval stage, the Court's task is merely to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Cook v. McCarron*, 92 C 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) (citing *Armstrong*, 616 F.2d at 314). Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id*.

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,

Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). In considering whether to grant preliminary approval of a proposed settlement agreement, the Court utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval…

Manual for Complex Litigation § 30.41 at 265 (3d ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness") (internal quotation omitted). After preliminary approval, the second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the class; *Newberg* § 11.41.

## A. The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval.

The Settlement represents a fair and reasonable resolution of the Action and is worthy of notice to and consideration by the Settlement Class Members. It will provide significant financial relief to Settlement Class Members as compensation for their Released Claims and will ensure that

NOVAtime's practices comply with BIPA to the extent it is applicable, which will benefit both Settlement Class Members and future employees.

A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful to consider the criteria on which the Court will ultimately judge the settlement.

In making these determinations, courts consider five factors: (1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997). All of these factors weigh in favor of approval of the Settlement and preliminary approval.

### i. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

The strength of the Settlement relief speaks for itself: NOVAtime has agreed to settle this case for $14,100,000.00 for a class of 62,078 individuals that will be allocated equally—with no reversion to NOVAtime—between claiming members of the Settlement Class. Exhibit 1, §§ 1.30, 1.32. First, all Settlement Class Members who submit a valid Claim Form will be ***guaranteed*** an

equal share of $4,100,000.00 of the Settlement Fund. A conservative estimate of per-class member payments is $330, less *pro rata* reductions for Class Counsel's Fee Award, Incentive Award to the Class Representative and Settlement Administrative Expenses, assuming that a relatively high 20% [3] of Class Members submit a Claim Form. Id. §§ 1.15, 1.18, 1.28, 1.30, 1.32. This relief, itself, stacks up well even outside the timeclock vendor context: BIPA employee-plaintiffs have received comparable payments or, in some cases, no monetary relief at all (such as credit monitoring*). E.g., Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty.) (providing credit monitoring only and no monetary relief*); Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) (in case against employer, paying claimants $270 in addition to credit monitoring). However, since this is a non-reversionary, claims-made Settlement, the per-class member payment will likely fluctuate based on the number of Claim Forms submitted.

Second, NOVAtime and its parent company, Ascentis Corporation, have agreed to the entry of a Confession of Judgment in the total amount of $14,100,000.00. Specifically, NOVAtime confirms a letter was sent to Axis on July 13, 2020, demanding Axis to contribute the policy limits of its relevant policies. Because both CNA and Axis have respectively denied coverage, NOVAtime and Ascentis Corporation agree to a Confession of Judgment in the total amount of $14,100,000.00 and an assignment of all rights under their Axis and CNA policies, and an assignment of any contract or tort causes of action arising from CNA's and Axis's denial of coverage, as set forth in § 1.32 of the Settlement Agreement.[4] Class Counsel has retained coverage

---

[3] This estimate is based on Plaintiff's Counsel experience with other similar BIPA settlements.

[4] Respectfully assuming this Court ultimately grants final approval of the Settlement, once granted, Class Counsel plans to file the Confession of Judgment and then pursue a new declaratory action against the insurers, CNA and Axis.

counsel to review the respective insurance policies for coverage of Plaintiffs' BIPA claims.[5] If successful, all Settlement Class Members will be provided a second Notice for their right to claim an equal share of additional funds up to $10,100,000.00. Assuming that the same relatively high 20% of Class Members submit Claim Forms, Settlement Class Members would be entitled to an additional $813, less *pro rata* reductions for Class Counsel's Fee Award and Settlement Administrative Expenses.

Third, with this Settlement, Class Members have retained all potential rights to pursue a BIPA matter against their respective employers for the employer's own possible BIPA violations. On the one other occasion to date where a plaintiff has secured relief to a class from a timeclock company separately, it simply has been a much smaller case that allowed employers to join. *See Muniz v. Workwell Techs., Inc.,* 2019-CH-04061 (Cir. Ct. Cook Cty.) (timeclock provider paid substantially entire insurance policy of $900,000, and employers were permitted to join the settlement for $1,000 per class member). That is not the case here. The Released Parties do not include NOVAtime's clients, including all Illinois employers or other entities to whom NOVAtime leased, sold, or otherwise provided finger-scan and/or hand-scan timeclocks, and any service involving finger and/or hand data related to such timeclocks. NOVAtime's clients are not given the option to join the Settlement and Class Members do not waive any right to pursue a separate action against their employer for the employer's own potential BIPA violations.

Finally, aside from the monetary relief, the non-monetary benefits created by this Settlement—here, NOVAtime's agreement to maintain and comply with a retention and destruction schedule and the implementation of a notice and consent process consistent with the BIPA requirements—also merit approval. Exhibit 1, § 2.2. The prospective relief will ensure that

---

[5] *See W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.,* 2020 WL 1330494 (Ill. App. Ct. Mar. 20, 2020).

thousands of individuals' rights are protected going forward and aligns perfectly with both the goals of BIPA and those of this lawsuit. It will ensure that past, current, and future employees who use / used NOVAtime's biometric system are protected as the legislature intended.

In evaluating the strength of the plaintiff's case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Because "[t]he essence of settlement is compromise," *id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this Action is far from certain. In addition to any defenses on the merits NOVAtime has raised, Plaintiff would also otherwise be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation")

27

(internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments and other relief now, instead of years from now or never. *Id*. at 582.

While Plaintiff believes he would likely prevail on his claims, he is also aware that NOVAtime has expressed a firm denial of his material allegations and the intent to pursue a number of substantial legal and factual defenses that—if proven—had the potential to substantially or fully deprive the putative class of relief.

First, NOVAtime has and would have argued that, as a timeclock vendor, it is simply not subject to BIPA liability. The question of whether timeclock vendors are liable under BIPA has caused a moderate split within the Courts (though some of the split turns on unclear allegations). *Compare Neals v. PAR Tech Corp.*, 419 F. Supp. 3d 1088 (N.D. Ill. 2019) (Guzman, J.); *Campos v. Midwest Time Recorders, Inc.*, No. 2019-CH-07229 (Cir. Ct. Cook Cty. Jan. 2, 2020) (Mitchell, J.); *Figueroa v. Kronos Inc.*, No. 19 C 1306, 2020 WL 1848206 (N.D. Ill. Apr. 13, 2020) (Feinerman, J.) (finding timeclock providers liable when they collective biometric data) *with Namuwonge v. Kronos, Inc.* 418 F. Supp. 3d 279, 285-86 (N.D. Ill. 2019); *Heard v. Becton, Dickinson & Co.*, No. 19 C 4158, 2020 WL 887460, at *4 (N.D. Ill. Feb. 24, 2020) (finding plaintiff had failed to allege an "affirmative act of collection"). While Plaintiff was confident that his Amended Complaint's allegations clearly established NOVAtime's liability, there was a meaningful risk that NOVAtime could evade liability altogether.

Furthermore, like numerous other BIPA defendants, NOVAtime was expected to assert that the data collected by its evidently fingerprint- and handprint-scanning timeclocks was not in

28

fact fingerprints or handprints at all, but instead some other kind of data unprotected by the statute. *See* 740 ILCS 14/10 (defining "biometric information" as any data "based on a biometric identifier and used to identify an individual). Plaintiff puts little stock in this argument, but no court has yet conclusively ruled it out at summary judgment. This too would prevent recovery completely.

Plaintiff intended to defeat these legal and factual arguments at summary judgment and/or trial, and is confident he could have done so, but the Settlement provides exemplary relief to the Settlement Class without delay necessitated by briefing and a trial on these questions. Finally, even if Plaintiff had succeeded at summary judgment and/or trial, Plaintiff expected that NOVAtime would argue for the reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g., Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million). Given the significant exposure that NOVAtime faced, it is an essentially foregone conclusion that these issues would be pressed on appeal, further delaying relief.

While Plaintiff does not believe that any of the arguments above are viable, it is an unavoidable fact that BIPA cases are largely cases of first impression, particularly where those cases are against entities other than commonly-sued employers. Plaintiff and the proposed Class Counsel have accordingly factored in the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts. This Settlement—providing excellent monetary and other prospective relief, and without delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's approval.

29

Here, the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides substantial guaranteed monetary benefits now, the ability for Settlement Class Members to pursue a BIPA matter against their respective employers for the respective employer's own BIPA violations, significant prospective relief, and the possibility of a second notice and right to claim additional funds if the anticipated declaratory action is successful. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). The Settlement Administrator will send each Settlement Class Member with an Approved Claim an initial Settlement Payment by check within 28 calendar days of the Effective Date. Exhibit 1, § 2.1(e). All Settlement Payments will state on the face of the check that the check will expire and become null and void unless cashed within 90 calendar days after the date of issuance. *Id*. To the extent that a check issued to Settlement Class Members is not cashed within 90 calendar days after the date of issuance, the check will be void. Uncashed checks will be distributed to a *cy pres* selected by the Parties and approved by the Court. *Id*. § 2.1(f). Settlement Class Members may request replacement checks within the 90-calendar day period after initial issuance. *Id*. § 2.1(g).

The proposed Settlement thus ensures that the Settlement Class Members will receive significant monetary relief now, retaining all rights to pursue a BIPA matter against their employer, prospective relief to ensure their biometric data is properly handled and in compliance with the legislature's goals, and the strong possibility of an additional award should Class Counsel prevails on its anticipated declaratory action against NOVAtime's insurers which is reasonable and

consistent with the established facts as applied to the governing law. Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the Action, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

> ii. **Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure a guaranteed recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled, as discussed above.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v.Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Here, further litigation would certainly result in fully briefed motions for summary judgment on liability, as well as other issues, and objections to class certification, and the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the Action. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that the Action holds for the Settlement Class. *See Isby*, 75 F.3d at 1199. The proposed Settlement, on the other hand, provides immediate benefits for all Settlement Class Members.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of preliminary approval.

### iii.     The Reaction of the Class Has Been Positive (Third Factor).

Because the Parties have not yet sent the Notice, it is premature to fully assess this factor. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 349. However, Plaintiff supports the Settlement, as does Class Counsel. The Court should more fully analyze this factor after Notice is issued and Class Members are given the opportunity to object.

### iv.     Competent Class Counsel Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Further, there is no indication that the proposed Settlement is the result of collusion. *See Isby*, 75 F.3d at 1200.

Class Counsel are competent and experienced in class actions, particularly complex class actions of this kind, and are intimately familiar with the strengths and weaknesses of the claims and defenses. *See* Stephan Decl. ¶¶ 3-6, 9-11, 14,18; Wise Decl. ¶¶ 4-8, 12. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Settlement Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the Settlement reached. *Id*. This factor therefore weighs in favor of preliminary approval.

> **v.** **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This complex class action was resolved less than a year after it was initiated. This period involved extensive research, analysis, investigation, the exchange of information, and extensive negotiations. *See* Stephan Decl. ¶¶ 11, 13-14, 16, 18; Wise Decl. ¶¶ 6-8, 11-12. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement. *Id*. Given the significant amount of time and resources spent by the Parties in discovery, mediation, and advancing the Action, this factor favors preliminary approval.

The factors all weigh in favor of issuing preliminary approval of the Settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

> **B.** **The Settlement Was the Result of Arm's-Length Negotiations, Without Any Hint of Collusion.**

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected private mediator, the Honorable Judge Morton Denlow (Ret.). As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis, and motion practice. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

33

In sum, the Settlement, on its face, is fair, reasonable, and adequate, and not the product of collusion. *See Isby*, 75 F.3d at 1198, 1200. In addition, "the proposed settlement is 'within the range of possible approval'" and should be submitted to the Settlement Class Members for their consideration. *Armstrong*, 616 F.2d at 314. The Court should grant preliminary approval.

## VII. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED.

The content of the proposed Claim Form and Notices, which are attached to the Settlement as Exhibits A, C, and D, fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The detailed information in the proposed Notices far exceed this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement provides that Notice will be issued via direct notice and internet notice by the Settlement Administrator as thoroughly described in the Settlement within 14 calendar days after entry of the Preliminary Approval Order. Exhibit 1, § 1.20. For all direct mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the Notice mailing to be re-mailed to those members of the Settlement Class. The proposed Notices contain information about how to exclude oneself or object to the Settlement. *See* Exhibits C and D to the Settlement. Class Members will have up to and including 42 days from the date the Notices are issued to exclude themselves from the Settlement. Exhibit 1, § 1.21. The Notices further explain that, after the Settlement receives Final Approval and after

34

any appeals, Class Members who submitted a valid Claim Form within 63 days following the Notice Date, will receive a settlement check and will have waived their BIPA claims and related causes of action against the Released Parties only. *See* <u>Exhibits C and D</u> to the Settlement.

## VIII.   PRELIMINARY APPROVAL OF PLAINTIFF'S COUNSEL'S FEES AND COSTS IS APPROPRIATE.

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class litigation is as a percentage of the common fund. *See Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572-74 (7th Cir. 1992), *later proceeding*, 985 F.2d 867 (7th Cir. 1993). To determine what percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from 33.3% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02 Civ. 1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method (*see Florin v. Nationsbank of Ga., N.A.*, 24 F.3d 560, 565-66 (7th Cir. 1994))—the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *5 (N.D. Ill. Dec. 23, 2016) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements."); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 763 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the

reasonableness of a fee cannot be assessed in isolation from what it buys").[6] Further, the Supreme Court has recognized that a percentage fee award is properly granted from the value of the total benefit that class counsel has created, and therefore necessarily includes the pool of money made available for class members. *Boeing Co. v. VanGemert*, 444 U.S. 472, 479-480 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Accordingly, Class Counsel requests that the Court grant preliminary approval of a Fee Award of $1,365,300.00, which represents 33.3% of the $4,100,000.00 portion of the Settlement Fund, plus costs and expenses not to exceed $23,401.52 (not including settlement administration costs). Assuming this Court grants final approval of the Settlement, Class Counsel then plans to file the Confession of Judgment and then pursue a new declaratory action against NOVAtime's insurers to recover the remaining balance of $10,100,000.00. If successful, only then will Class Counsel seek the recovery of their additional attorneys' fees and costs litigating the declaratory action.

## IX. CONCLUSION

While the Parties believe the Settlement merits Final Approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the Settlement to be sent to the Settlement Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Settlement Class Members of the fairness of the Settlement, the benefits to be received by Settlement Class Members, and Class Counsel's

---

[6] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("the trend in this circuit is toward the percentage method"); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund") (citing *In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998)) (internal quotation marks omitted).

request for a Fee Award. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-36

(3d ed. 2001). For the reasons set forth above, Plaintiff respectfully requests that the Court grant

this Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the

Proposed Preliminary Approval Order, attached as <u>Exhibit E</u> to the Settlement.

Date: October 12, 2020             Respectfully Submitted,

                                   */s/ Andrew C. Ficzko*
                                   Ryan F. Stephan
                                   James B. Zouras
                                   Andrew C. Ficzko
                                   **STEPHAN ZOURAS, LLP**
                                   100 N. Riverside Plaza
                                   Suite 2150
                                   Chicago, Illinois 60606
                                   312.233.1550
                                   312.233.1560 *f*
                                   rstephan@stephanzouras.com
                                   jzouras@stephanzouras.com
                                   aficzko@stephanzouras.com

                                   Brandon M. Wise
                                   Peiffer Wolf Carr Kane & Conway, APLC
                                   818 Lafayette Ave., Floor 2
                                   St. Louis, MO 63104
                                   bwise@peifferwolf.com

                                   **ATTORNEYS FOR PLAINTIFF**
                                   **AND THE PUTATIVE CLASS**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on October 12, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

<u>  /s/ Andrew C. Ficzko          </u>