**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY THOME, individually and on behalf of all others similarly situated,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:19-cv-06256** |
| **v.** | ) | |
| | ) | **Hon. Matthew F. Kennelly** |
| **NOVATIME TECHNOLOGY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**Stephan Zouras, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com


Brandon M. Wise
**Peiffer Wolf Carr Kane & Conway, APLC**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314.833.4825
bwise@peifferwolf.com

**TABLE OF CONTENTS**

I.      INTRODUCTION................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................2

III.    SUMMARY OF SETTLEMENT TERMS ........................................................4

        A.      Settlement Class. ......................................................................................4

        B.      The Settlement Fund. ...............................................................................5

        C.      Confession of Judgment. ..........................................................................6

        D.      Assignment. ...............................................................................................6

        E.      Prospective Relief. ....................................................................................7

        F.      Payment of Settlement Notice and Administrative Costs. ..................7

        G.      Payment of Attorneys' Fees, Costs, and Incentive Award. ................7

        H.      Release of Liability. ..................................................................................8

        I.      Settlement Administration. ......................................................................8

        J.      Objections and Opt-Outs. .......................................................................10

IV.     THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE
        23..........................................................................................................................10

V.      THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED
        BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF
        A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS. ......................11

        A.      The Settlement is Fair, Reasonable, and Adequate. .........................11

                1.      The Settlement Amount Is Substantial Given the Strengths of
                        Plaintiff's Claims and Attendant Risks (First Factor). .......12

                2.      Litigation Through Trial and Appeals Would be Complex, Costly,
                        and Long (Second Factor). ...............................................18

                3.      The Reaction of the Class Has Been Positive (Third Factor)..............20

4.       **Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).**......................................................................................................21

5.       **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**......................................................22

B.      **Approval of the Release of Class BIPA Claims Is Appropriate.**....................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**      **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................................ 11, 12

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ........................................................................................ 21

*Carroll v. Crème de la Crème, Inc.*,
   No. 2017-CH-01624 (Cir. Ct. Cook Cty.) .................................................................... 2

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir. 1996) ...................................................................................... 21

*Donovan v. Estate of Fitzsimmons*,
   778 F.2d 298 (7th Cir. 1985) ................................................................................... 18, 19

*EEOC v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ........................................................................... 12, 15, 17

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ....................................................................................... 12

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ....................................................................................... 11

*Fluker v. Glanbia Performance Nutrition, Inc.*,
   2017-CH-12993 (Cir Ct. Cook Cty.) .......................................................................... 14

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019)................................................................................................... 2

*Gascho v. Glob. Fitness Holding, LLC*,
   822 F.3d 269 (6th Cir. 2016) ................................................................................... 1, 20

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ....................................................................................... 21

*Goings v. AEP NVH OPCO, LLC d/b/a Applied Acoustics, et al.*,
   2017-CH-14954 (Cir. Ct. Cook Cty.) ......................................................................... 14

*Goldsmith v. Tech Sols. Co.*,
   No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)................................... 18

iv

*Hispanics United of DuPage County v. Village of Addison, Illinois*,
988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................................ 20

*In re Google Referrer Header Privacy Litig.*,
   869 F.3d 737 (9th Cir. 2017) .................................................................................... 2

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). ........................................................ 18

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ............................................................................ passim
*Kusinski, et al. v. ADP, LLC*,
   2017-CH-12364 (Cir. Ct. Cook Cty.) ..................................................................... 14

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
   834 F.2d 677 (7th Cir. 1987) ................................................................................. 17

*Marshall v. Lifetime Fitness, Inc.*,
   2017-CH-14262 (Cir. Ct. Cook Cty.) ..................................................................... 14

*Mirfasihi v. Fleet Mortgage Corp.*,
   356 F.3d 781 (7th Cir. 2004) ................................................................................. 12

*Muniz v. Workwell Techs., Inc.*,
   2019-CH-04061 (Cir. Ct. Cook Cty.) ..................................................................... 13

*Patterson v. Stovall*,
   528 F.2d 108 (7th Cir. 1976) ................................................................................. 11

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ................................................................................. 21

*Pichlet v. UNITE*,
   775 F. Supp. 2d 754 (E.D. Pa. 2011) .................................................................... 18

*Prelipceanu v. Jumio Corp.*,
   2018-CH-15883 (Cir. Ct. Cook Cty.) ..................................................................... 14

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ................................................................................. 19

*Roberts v. Apple Sauce, Inc.*,
   No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014)............................. 23

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................... 15, 16, 19

*Seiden v. Nicholson,*
  72 F.R.D. 201 (N.D. Ill. 1976) ................................................................................... 19

*Sekura v. LA Tan,*
  No. 2015-CH-16694 (Cir. Ct. Cook Cty.) .............................................................. 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
  463 F.3d 646 (7th Cir. 2006) ..................................................................................... 12

*Theodore Broomfield b. Craft Brew All., Inc.,*
  No. 17-CV-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .................. 20

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.,*
  2020 WL 1330494 (Ill. App. Ct. Mar. 20, 2020) ................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005) ......................................................................................... 11

*Williams v. Quinn,*
  748 F. Supp. 2d 892 (N.D. Ill. 2010) ...................................................................... 15

**Statutes**
Illinois Biometric Information Privacy Act ("BIPA"),
  740 ILCS 14/1, *et seq.* ................................................................................................. 1

**Rules**
Fed. R. Civ. P. 23 ........................................................................................................ 10, 11

**Treatises**
Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88
  (4th ed. 2002) ............................................................................................................. 21

## I.      INTRODUCTION

Plaintiff and Class Representative Timothy Thome ("Named Plaintiff"), brought a putative class action against Defendant NOVAtime Technology, Inc. ("NOVAtime" or "Defendant"), a vendor of biometric timeclocks and related software, asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* The Court preliminarily approved this $14,100,000.00 non-reversionary settlement in October 2020.

Unlike the majority of other BIPA cases filed against employers, NOVAtime is a manufacturer and distributor of biometric timeclocks and related software used by employers statewide for various reasons, including to track employee time. Plaintiff alleged that NOVAtime itself (not just the employers utilizing the devices), collected his biometric data through such timeclocks and software but failed to notify employees, failed to obtain informed consent, and otherwise failed to comply with BIPA.

After particularly intense negotiations that required two formal mediation sessions with an experienced mediator, Plaintiff and NOVAtime agreed to settle the Settlement Class's claims for outstanding monetary and prospective relief. Additionally, the relief is all the more valuable because Class Members retain their claims against their individual employers for potential BIPA violations.[1]

In compliance with the Court's Amended Preliminary Approval Order (D.E. 76), the multi-pronged notice plan was effectuated, directing notice to the 68,213-member Settlement Class. The response has been one of overwhelming support: more than 10% of Class Members have filed claims, exceeding typical rates. *See Gascho v. Glob. Fitness Holding, LLC,* 822 F.3d 269, 290 (6th Cir. 2016) (crediting expert testimony that response rates in claims-made class action settlements

---

[1] Unless otherwise defined herein, all capitalized terms used herein will have the same meaning as defined in the Class Action Settlement Agreement and Release ("Settlement"), attached hereto as Exhibit 1.

"generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent[.]"). Further, only one person objected and only three people have requested to opt out.

The response from the Settlement Class is not surprising, given the strength of this Settlement compared to so many other privacy settlements that provide little meaningful relief to the class. Often times, such class action settlements provide only *cy pres* relief or injunctive relief, with most of the money allocated to the lawyers. *See, e.g., In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017) *vacated on other grounds by Frank v. Gaos,* 139 S. Ct. 1041 (2019) (approving 25% award of attorneys' fees on *cy pres*-only fund with not a penny to class members). That has been the case in BIPA too. *See, e.g., Carroll v. Crème de la Crème, Inc.,* No. 2017-CH-01624 (Cir. Ct. Cook Cty.) (providing credit monitoring only and no monetary relief).

Here, Plaintiff was able to provide a Settlement that requires NOVAtime to provide exceptional relief, all while preserving potential claims against the employers using the timeclocks and related software. The Parties' settlement of this Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. Plaintiff respectfully requests the Court: (1) grant final approval of the Settlement, attached as Exhibit 1; and, (2) enter the Proposed Final Approval Order, attached as Exhibit 2.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement (D.E. 72), Named Plaintiff, Timothy Thome, filed the above-captioned class action in the Circuit Court of Cook County on August 14, 2019, and his Amended Class Action Complaint on January 23, 2020, alleging that his employer used NOVAtime's biometric timeclocks and related software to authenticate and monitor his and other

Illinois employees' working hours. (D.E. 45 at ¶¶ 47-48.) Plaintiff alleged that NOVAtime collected his biometric data. (*Id*. at ¶¶ 49, 77, 86, 88-89, 96.) Besides failing to notify individuals that it was collecting biometric data in the first place, Plaintiff alleged that NOVAtime failed to seek or secure informed written consent. (*Id*. at ¶¶ 53, 88, 98.) Finally, Plaintiff alleged that NOVAtime failed to develop or comply with any written policy for permanently destroying individuals' biometric data. (*Id*. at ¶¶ 52, 79-80.)

NOVAtime responded to Plaintiff's allegations contending that its technology did not capture or possess any biometric identifiers or information. Rather, NOVAtime contended that its technology merely created an alphanumeric value based on a reading of ligature points on an individual's finger, but that no biometric image was created—and none could be ascertained through the alphanumeric value that was created by its technology. In sum, NOVAtime contended that its technology does not capture, collect, or otherwise obtain the biometric information that BIPA was intended to regulate.

On September 19, 2019, NOVAtime removed the matter to federal court. (D.E. 1.) On October 10, 2019, NOVAtime filed a motion to dismiss which the Court denied as to Counts 1 and 2, but granted it as to Count 3 of the Complaint with leave to amend. (D.E. 14, 44.) On January 23, 2020, Plaintiff filed an Amended Class Action Complaint. (D.E. 45.) Thereafter, the Parties exchanged Rule 26(a)(1) initial disclosures and Plaintiff propounded written discovery, including interrogatories and request for production of documents, which NOVAtime responded to. On February 26, 2020, NOVAtime filed its answer and affirmative defenses and on April 29, 2020, the Court stayed the matter through July 1, 2020, to provide the Parties an opportunity to engage in mediation. (D.E. 53, 62.)

On June 29, 2020, Counsel for all Parties participated in a formal, full-day mediation with the Hon. Morton Denlow (Ret.) of JAMS of Chicago, who possesses significant expertise in class settlements. Though the Action did not settle at this initial mediation, the Parties agreed that progress could still be made on a future mediation. Therefore, the Parties engaged in a second formal mediation with Judge Denlow on July 8, 2020, and the extensive negotiations culminated in the Settlement for which the Parties now seek final approval.

On October 12, 2020, Plaintiff filed the Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement. (D.E. 72.) On October 20, 2020, the Court granted Preliminary Approval of the Settlement. (D.E. 75.) On November 4, 2020, the Court entered the Amended Preliminary Approval Order. (D.E. 76.)

### III. SUMMARY OF SETTLEMENT TERMS

The terms of the Settlement are set forth in the Class Action Settlement Agreement and Release, Ex. 1, and are briefly summarized here:

### A. Settlement Class.

The proposed "Settlement Class" includes all individuals who were enrolled in a NOVAtime biometric timekeeping system and subsequently used a NOVAtime timeclock that utilized a fingerprint, hand-geometry, or other biometric verification method in the State of Illinois between August 14, 2014 and October 19, 2020. (Exhibit 1, § 1.30.)[2]

---

[2] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their families, (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (4) the legal representatives, successors or assigns of any such excluded person. (Exhibit 1, § 1.30.)

4

### B.     The Settlement Fund.

The Settlement established a common fund in the total amount of $14,100,000.00. NOVAtime will not be required to provide settlement funding that exceeds $4,100,000.00, no part of which will revert to NOVAtime. NOVAtime and its parent company, Ascentis Corporation, have agreed to a Confession of Judgment in the total amount of $14,100,000.00 and an assignment of their rights under Axis Insurance Policy No. P-001-000247286-01 and Policy No. MLN6357565/01/2019 and applicable CNA policies and assignment of any contract or tort causes of action whether grounded in common law or statute, arising from the denial of coverage, as set forth in § 1.10 of the Settlement. The Confession of Judgment will be filed with the Court. (Exhibit 1, § 1.32.)

All Settlement Class Members who submitted a valid Claim Form will be guaranteed an equal share of $4,100,000.00 of the Settlement Fund. Remarkably, 6,979 Class Members or more than 10% of the Settlement Class have filed claims. (Declaration of Stephen L. Donaldson, ("Donaldson Decl."), attached hereto as Exhibit 3, at ¶ 15.) The minimum gross amount recovered by each Class Member is approximately $587.  If Plaintiff's request for fees, expenses, and costs are approved, each claimant will receive a net award of approximately $365.

Additionally, NOVAtime and its parent company, Ascentis Corporation, have agreed to the entry of a Confession of Judgment in the total amount of $14,100,000.00. Because their insurance carriers have denied coverage, NOVAtime and Ascentis Corporation have agreed to the Confession of Judgment and an assignment of all rights under the relevant policies, and an assignment of any contract or tort causes of action arising from the denial of coverage, as set forth

in § 1.32 of the Settlement Agreement.[3] If successful, all Settlement Class Members will be provided a second Notice for their right to claim an equal share of additional funds up to $10,000,000.00. Assuming that a similar 10% of the Class Members submit Claim Forms, Settlement Class Members would be entitled to an additional gross amount of approximately $1,432, less *pro rata* reductions for Class Counsel's Fee Award and Settlement Administration Expenses.

### C. Confession of Judgment.

NOVAtime and its parent company, Ascentis Corporation, agree to a Confession of Judgment in the total amount of $14,100,000.00. NOVAtime confirms a letter was sent to Axis Insurance Company on July 13, 2020, demanding Axis contribute the policy limits of its policies. Because CNA and Axis have both failed to provide respective coverage, NOVAtime and Ascentis Corporation have agreed to a Confession of Judgment in the total amount of $14,100,000.00 and an assignment of all of their rights under Axis Policy No. MLN635765/01/2019 and Axis Policy No. P-001-000247286-01, and all other applicable Axis and CNA policies, and assignment of any contract or tort causes of action, whether grounded in common law or statute, arising from CNA's and Axis's denial of coverage, as set forth in § 1.10 of the Settlement. (Exhibit 1, § 1.9.)

### D. Assignment.

NOVAtime and Ascentis Corporation, on the Effective Date, assign to Plaintiff, as representative of and on behalf of the Settlement Class, to the fullest extent permitted by law, all of their claims against and rights to payment under Axis Policy No. MLN635765/01/2019 and

---

[3] Respectfully assuming this Court grants final approval of the Settlement, once granted, Class Counsel plan to file the Confession of Judgment and then pursue a new declaratory action against the insurers, CNA and Axis.

Axis Policy No. P-001-000247286-01, from which Plaintiff will seek to recover, as set forth in § 1.32 of the Settlement. (Exhibit 1, § 1.10.)

### E. Prospective Relief.

NOVAtime has made available on its website NOVAtime's written policy stating its retention schedule and guidelines for permanently destroying biometric data, and agrees to comply with said written retention schedule and guidelines. NOVAtime has also implemented a notice and consent process that informs the employee-user in writing of NOVAtime's finger-scan or hand-scan timeclocks of (i) the biometric data that is being collected, stored, and used by the employer and/or NOVAtime, (ii) the purposes and length of term that biometric data is being collected, stored, and used, (iii) its duty to secure a written release for the collection, storage and use of biometric data in order to enroll in NOVAtime's biometric timeclocks, and (iv) its duty to secure consent for the disclosure of biometric data to any third party. (Exhibit 1, § 2.2.)

### F. Payment of Settlement Notice and Administrative Costs.

NOVAtime will pay from the Settlement Fund all expenses incurred by the Settlement Administrator in, or associated with, administering the Settlement, providing Notice, mailing checks, and any other related expenses not to exceed $150,000.00. (*Id*. § 1.28.)

### G. Payment of Attorneys' Fees, Costs, and Incentive Award.

Contemporaneous with this Motion, Plaintiff will apply for Court approval and distribution of an Incentive Award to the Named Plaintiff, paid out of the Settlement Fund, of $7,500.00. (*Id.* § 1.18.) In addition, Class Counsel will petition the Court for approval of an award of attorneys' fees of 33.3% of the $4,100,000.00 portion of the Settlement Fund in the amount of $1,365,300.00, with costs and expenses not to exceed $23,401.52. (*Id.* §§ 8.1-8.3.) Respectfully assuming this Court grants final approval of the Settlement, Class Counsel then plans to file the Confession of

Judgment and pursue a new declaratory action against NOVAtime's insurers to recover the remaining balance of $10,000,000.00. If successful, only then will Class Counsel seek the recovery of their additional attorneys' fees and costs litigating the declaratory action. Class Counsel submits that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

        **H.**      **Release of Liability.**

In exchange for the relief described above, NOVAtime and related entities will be released from claims relating to the alleged collection, capture, storage, use, profit from, possession, disclosure, and/or dissemination of biometric data, including BIPA claims. (*Id.* §§ 1.24, 1.25.) Released Parties shall not include: (a) any entity that manufactured, sold, or otherwise provided NOVAtime with any finger-scan and/or hand-scan technology (including software and hardware), (b) NOVAtime's clients, including but not limited to, the Settlement Class's employers or other entities to whom NOVAtime leased, sold, or otherwise provided finger-scan and/or hand-scan timeclocks and related software, and any service involving finger and/or hand data related to such timeclocks and software, (c) Axis Insurance Company and/or those Underwriters that issued the Axis Policy No. MLN635765/01/2019 and Axis Policy No. P-001-000247286-01 as well as Axis's reinsurers and CNA. To the extent any of the Ptarmigan reinsurers are the same as Axis reinsurers, such reinsurers are not released. (*Id.* § 1.25.)

        **I.**      **Settlement Administration.**

The Parties engaged JND Legal Administration ("JND"), to prepare, print, mail, and e-mail the Class Notice, to track exclusions and objections, and to draft and mail settlement checks. (Donaldson Decl. ¶ 2.) Between October 23, 2020 and November 20, 2020, Counsel for the

Defendant provided JND with a mailing list containing Class Member's names, e-mail addresses, U.S. mail addresses, social security numbers, and phone numbers ("Class List"). (*Id*. ¶ 4.) Counsel for Defendant provided JND with several electronic files containing the names and last-known mailing addresses for 67,701 Class Members, as well as e-mail addresses for 15,877 of these Class Members. (*Id.*) JND also received names and email addresses for 512 additional Class Members. (*Id.*) Defendant's Counsel has provided data for a total of 68,213 Class Members. (*Id*.) The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address database ("NCOA") maintained by the U.S. Postal Service. (*Id*. ¶ 5.) The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Class Notice. (*Id*. ¶ 5, fn.1.) On November 23, 2020, Class Notices were sent via first-class regular U.S. mail to 67,701 Class Members. (*Id.* ¶ 5.) Prior to mailing, JND updated 7,202 Class Member addresses using the NCOA. (*Id*.) On November 23, 2020, JND e-mailed Class Notice to 16,389 Class Members. (*Id*. ¶ 6.) As of February 25, 2021, 3,398 e-mailed Class Notices were returned as undeliverable. (*Id*.) The Class Notice advised Class Members that they could submit an exclusion and/or objection postmarked by January 4, 2021. (*Id*. ¶ 10.) During the Notice period, JND tracked 1,178 Class Notices from the original mailing that were returned as undeliverable without a forwarding address. (*Id*. ¶ 7.) JND conducted advanced address research and updated address information was received for 662 Class Members. (*Id.*) JND re-mailed the Class Notice to the 662 Class Members for which an updated address was received. (*Id*.) Of the 662 Class Notices mailed to a more current address identified from trace, 70 Class Notices were returned to JND as undeliverable a second time. (*Id*.) As of February 25, 2021, 586 Class Notices remain undeliverable with no valid mailing addresses.

(*Id.* ¶ 8.) In addition, of the 16,389 Class Notices that were e-mailed, 3,398 Class Notices remain undeliverable with no valid e-mail address. (*Id.* ¶ 9.) As of February 25, 2021, JND received three exclusions. (*Id.* ¶ 20.)

### J. Objections and Opt-Outs

The deadline to opt out or object to the settlement was January 4, 2021. (Donaldson Dec. ¶¶ 19, 16.) This deadline has now passed. Only three Class Members requested exclusion from the settlement, and one Class Member objected to the settlement three weeks after the Objection/Exclusion deadline had passed. (*Id.* ¶¶ 20, 18.)[4]

## IV. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Under Rule 23(c)(2)(B), notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

As set forth above and demonstrated by the thoroughness of the Notice, the Parties' effort to effectuate notice by mail and e-mail to the Class Members meets the requirements of Rule

---

[4] Class Member Cassidy Green objected to the Settlement indicating the monetary award per Class Member is too low when compared to the invasion of privacy for Defendant's alleged failure to comply with BIPA. (*See* Notice of Class Member(s) Objection to Proposed Settlement ("Objection"), attached hereto as Exhibit 4.) However, as explained in more detail in § V below, the Settlement is comparable, if not superior, to the other timeclock and related software vendor settlements that do exist and have achieved final approval. Further, while providing monetary relief, the Settlement preserves all potential claims an individual may have against their employer using the biometric devices for additional potential monetary relief. Finally, in addition to the monetary relief, and addressing many of Mr. Green's concerns, NOVAtime has agreed to comply with the requirements of BIPA, which will ensure that past, current, and future employees who use / used NOVAtime's biometric system are protected as the legislature intended.

23(c)(2)(B). (*See* Mailed Notice, attached hereto as Exhibit 5; E-mailed Notice, attached hereto as Exhibit 6.)

## V. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA and, thus, should be approved.

### A. The Settlement Is Fair, Reasonable, and Adequate.

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram*

*Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).

The Settlement is substantial considering NOVAtime's agreement to settle this case for $14,100,000.00 for a class of 68,213. (Exhibit 1, §§ 1.30, 1.32.) First, all Settlement Class Members who submitted a valid Claim Form will be **_guaranteed_** an equal share of $4,100,000.00 of the Settlement Fund. Here, 6,979 Class Members or more than 10% of the Settlement Class have filed claims. (Donaldson Decl. at ¶ 15.) The minimum gross amount recovered by each Class Member is $587. If Plaintiff's request for fees, expenses, and costs are approved, each claimant will receive $365.

Second, NOVAtime and its parent company, Ascentis Corporation, have agreed to the entry of a Confession of Judgment in the total amount of $14,100,000.00. Specifically, NOVAtime confirms a letter was sent to Axis on July 13, 2020, demanding Axis to contribute the policy limits of its relevant policies. Because both CNA and Axis have respectively denied coverage, NOVAtime and Ascentis Corporation agree to a Confession of Judgment in the total amount of $14,100,000.00 and an assignment of all rights under their applicable Axis and CNA policies, and an assignment of any contract or tort causes of action arising from CNA's and Axis's denial of coverage, as set forth in § 1.32 of the Settlement Agreement. If final approval is granted, Class Counsel plans to file the Confession of Judgment and pursue a declaratory action against the insurers, CNA and Axis. Class Counsel has retained coverage counsel to review the respective insurance policies for coverage of BIPA claims.[5] If successful, all Settlement Class Members will be provided a second Notice for their right to claim an equal share of additional funds up to $10,000,000.00. Assuming a similar 10% of the Class Members submit Claim Forms, Settlement Class Members would be entitled to an additional $1,432, less *pro rata* reductions for Class Counsel's Fee Award and Settlement Administrative Expenses.

Third, most BIPA settlements in the employment context have just released the timeclock vendor alongside the employer, with no payment to the class from the vendor at all or any promise of injunctive relief. This Settlement is comparable, if not superior, to the other few timeclock and related software vendor settlements that do exist and have achieved final approval. In *Muniz*, the settlement was smaller in scale and allowed the employer to join the settlement. *See Muniz v. Workwell Techs., Inc.*, 2019-CH-04061 (Cir. Ct. Cook Cty.) (timeclock provider paid substantially

---

[5] *See W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.,* 2020 WL 1330494 (Ill. App. Ct. Mar. 20, 2020).

entire insurance policy of $900,000 and employers were permitted to join the settlement for $1,000 per class member). The *Kusinski*, settlement, remarkable in its own right, resulted in a similar per-claiming Class Member as the Settlement here. *See Kusinski, et al. v. ADP, LLC,* 2017-CH-12364 (Cir. Ct. Cook Cty.) (approximately $350 for each claiming Class Member).

Even when compared to other BIPA settlements, this Settlement favorably compares. *E.g., Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) (in case against employer, paying claimants $270 in addition to credit monitoring); *Sekura v. LA Tan*, 2015-CH-16694 (Cir. Ct. Cook Cty.) (in case against tanning salon, claimants split $1.5 million fund for a total of approximately $150 per claimant); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cty.) (in case against facial recognition provider, claimants split $7,000,000.00 fund for approximately $260 each). But critically, with this Settlement, Class Members have retained all potential rights to pursue a BIPA matter against their respective employers for the employer's own possible BIPA violations. The Released Parties do not include NOVAtime's clients, including all Illinois employers or other entities to whom NOVAtime leased, sold, or otherwise provided finger-scan and/or hand-scan timeclocks and related software, and any service involving finger and/or hand data related to such timeclocks and software. NOVAtime's clients are not given the option to join the Settlement and Class Members do not waive any right to pursue a separate action against their employer for the employer's own potential BIPA violations. Plaintiffs have been successful in BIPA cases obtaining substantial settlements for the employer liability alone. *See, e.g., Fluker v. Glanbia Performance Nutrition, Inc.,* 2017-CH-12993 (Cir Ct. Cook Cty.) (settlement of $1,300 per class member for employer liability only); *Goings v. AEP NVH OPCO, LLC d/b/a Applied Acoustics, et al.*, 2017-CH-14954 (Cir. Ct. Cook Cty.) (settlement of $1,200 per class member for employer liability only).

Finally, aside from the monetary relief, the non-monetary benefits created by this Settlement—NOVAtime's agreement to maintain and comply with a retention and destruction schedule and the implementation of a notice and consent process consistent with the BIPA requirements—also merit approval. (Exhibit 1, § 2.2.) The prospective relief will ensure that thousands of individuals' rights are protected going forward and aligns perfectly with both the goals of BIPA and those of this lawsuit. It will ensure that past, current, and future employees who use / used NOVAtime's biometric system are protected as the legislature intended.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety") Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. If the Parties were to proceed forward with litigating this matter, Plaintiff would be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid

the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments and other relief now, instead of years from now or never. *Id*. at 582.

     On liability, while Plaintiff believes he would likely prevail on his claims, Plaintiff would have to overcome Defendant's defenses including but not limited to whether timeclock / software vendors are subject to BIPA liability; whether the data collected by its timeclocks and related software was not in fact fingerprints or handprints at all, but instead some other kind of data unprotected by the statute; and whether Plaintiff properly pleaded his claims, and whether any alleged non-compliance with BIPA was negligent, intentional, or reckless to warrant statutory liquidated damages. The proposed Settlement ensures that Class Members will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law.

     It is an unavoidable fact that BIPA cases are largely cases of first impression, particularly where those cases are against entities other than commonly-sued employers. The risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts were considered here. This Settlement—providing excellent monetary and other prospective relief, and without delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's final approval.

     Here, the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides substantial guaranteed monetary benefits now, the ability for Settlement Class

Members to pursue a potential BIPA matter against their respective employers for the respective employer's own BIPA violations, significant prospective relief, and the possibility of a second notice and right to claim additional funds if the anticipated declaratory action is successful. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). The Settlement Administrator will send each Class Member with an Approved Claim an initial Settlement Payment by check within 28 calendar days of the Effective Date. (Exhibit 1, § 2.1(e).) All Settlement Payments will state on the face of the check that the check will expire and become null and void unless cashed within 90 calendar days after the date of issuance. (*Id.*) To the extent that a check issued to Settlement Class Members is not cashed within 90 calendar days after the date of issuance, the check will be void. Uncashed checks will be distributed equally to the *cy pres* of Greater Chicago Food Depository and 360 Youth Services, upon approval by the Court. (*Id.* § 2.1(f).) Settlement Class Members may request replacement checks within the 90-calendar day period after initial issuance. (*Id.* § 2.1(g).)

The Settlement thus ensures that the Settlement Class Members will receive significant monetary relief now, retaining all rights to pursue a potential BIPA matter against their employer, prospective relief to ensure their biometric data is properly handled and in compliance with the legislature's goals, and the strong possibility of an additional award should Class Counsel prevail on their anticipated declaratory action against NOVAtime's insurers which is reasonable and consistent with the established facts as applied to the governing law. In light of the substantial

recovery this settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final Settlement approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). The Settlement here allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years more of litigation at every phase of this case—all of which would pose the possibility of significant stumbling blocks for this Class. Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled.

Assuming that the Class would ultimately have been certified (and that Plaintiff would have defeated a summary judgment motion), the case would have proceeded to trial where the Parties are likely to litigate a horde of complex issues that, in light of BIPA's relative infancy, are either still being resolved by the courts or are matters of first impression. *See, e.g., Pichlet v. UNITE,* 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011) (approving class action settlement in light of

the complexity of future litigation on issues of first impression). Again, although Plaintiff believes in the strength of his claims—a risk that NOVAtime evidently appreciated in light of the Settlement it agreed to—further litigation poses risks on both sides.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in dozens of depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

### 3.    The Reaction of the Class Has Been Positive (Third Factor).

The Settlement Class's reaction to the Settlement has been overwhelmingly positive and weighs strongly in favor of final approval. Only one Class Member objected to the Settlement.[6] This is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). As stated above, the Settlement Administrator has thoroughly implemented the notice plan, and the Objection/Exclusion deadlines have passed. (*See generally* Donaldson Decl.) This relatively large class of 68,213 people had the opportunity to examine this Settlement—along with the ever-growing number of active lawyers involved in bringing BIPA cases—and only one individual found reason to object. Moreover, the very small number of exclusions—just three—is a further demonstration of remarkable support. Finally, the claims rate here is excellent and at the high range of rates in comparable class settlements. *See Theodore Broomfield b. Craft Brew All., Inc.,* No. 17-CV-01027-BLF, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving class action with claims rate of 2%, noting that claims rates in larger settlements are often below 5%); *Gascho*, 822 F.3d at 290 (discussing expert testimony that response rates in claims-made class action settlements "generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent[.]"). The strong response rate and lack of significant opposition demonstrates overwhelming support for the Class. Thus, this factor also favors approval of the settlement.

---

[6] The objection was filed over three weeks after the Objection/Exclusion deadline.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. When the Parties entered into negotiations, those negotiations took place in multiple rounds over a number of mediations—a total of two—with an experienced and well-respected private mediator, Hon. Morton Denlow (Ret.). In short, it took the Parties considerable effort to reach the detailed terms of this Settlement now before the Court. (Declaration of Ryan F. Stephan, ("Stephan Decl."), attached hereto as Exhibit 7, at ¶ 15; Declaration of Brandon Wise, ("Wise Decl."), attached hereto as Exhibit 8, at ¶ 9.)

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions and are familiar with the strengths and weaknesses of the claims and defenses. (Stephan Decl. ¶¶ 7, 19; Wise Decl. ¶¶ 5-8.) Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. (Stephan Decl. ¶ 19; Wise Decl. ¶ 13.) Simply put, Class Counsel believe that the Settlement is certainly in the best interest

of the Settlement Class. (Stephan Decl. ¶¶ 19, 23; Wise Decl. ¶ 15.) First, the monetary relief provided far exceeds relief in many similar class settlements and similar BIPA settlements—even for a much larger class than is typically involved in an employer BIPA case. Second, a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery. Third, and finally, the injunctive and prospective measures provided for in the settlement ensure that Class Members are protected going forward. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex class action was resolved a year and a half after it was initiated. This period, along with time spent pre-litigation, involved research into BIPA and the rapidly evolving case law in this area, analysis of the strength and weaknesses of Plaintiff's claims and Defendant's defenses, including consultations with undisclosed experts, investigation into Defendant's policies and practices regarding the collection, capture, storage, use, and dissemination of biometric data, the exchange of confirmatory discovery regarding settlement, and two mediations. (Stephan Decl. ¶¶ 12, 14-15; Wise Decl. ¶ 9.) The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. (Stephan Decl. ¶ 19; Wise Decl. ¶ 13.) Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this fifth, and final, factor favors final approval of the settlement.

### B. Approval of the Release of Class BIPA Claims Is Appropriate.

The Parties also request that the Court specifically approve the release of Class Members' BIPA claims as defined in the Settlement Agreement. (Exhibit 1, § 1.24.) In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by

experienced counsel after thorough investigation, discovery, and analysis. Because the Settlement, including Class Members' releases of their BIPA claims, resolves a bona fide dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement and enter the Proposed Final Approval Order, attached as Exhibit 2.

Date:   February 25, 2021

Respectfully Submitted,

*/s/ Ryan F. Stephan*

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jazouras@stephanzouras.com
aficzko@stephanzouras.com

Brandon M. Wise
Peiffer Wolf Carr Kane & Conway, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
bwise@peifferwolf.com

**CLASS COUNSEL**