**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY THOME, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 1:19-cv-06256 |
| v. | Honorable Matthew F. Kennelly |
| NOVATIME TECHNOLOGY, INC., | |
| *Defendant.* | |

**PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

III.   TERMS OF THE SETTLEMENT AGREEMENT ......................................... 5

     A.     Settlement Class .................................................................................. 5

     B.     Settlement Fund. ................................................................................. 5

     C.     Claim Form. ........................................................................................ 5

     D.     Approved Claim. ................................................................................. 6

     E.     Methods and Form of Notice. ............................................................. 6

     F.     No Exclusion or Objection Procedures. .............................................. 7

     G.     Release of Liability. ........................................................................... 8

IV.   THE PROPOSED SETTLEMENT PROCEDURE ......................................... 8

V.    THE PROPOSED SETTLEMENT SHOULD BE PRELIIMINARILY APPROVED.... 10

VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 11

     A.     Plaintiff and Class Counsel Have Adequately Represented the Settlement Class.13

     B.     The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties. ......................................................................................... 16

     C.     The Settlement Agreement Treats Settlement Class Members Equitably. ........... 17

     D.     The Relief Secured for the Settlement Class Is Adequate and Warrants Approval. 18

         1.     The cost, risk, and delay of further litigation compared to the Settlement Agreement's benefits favors preliminary approval ............................................... 18

         2.     The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval ........................................................ 19

         3.     The terms of the requested attorneys' fees are reasonable. .......................... 20

VII.  THE PROPOSED NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED IN FORM AND SUBSTANCE ................................................................... 21

VIII.     CONCLUSION .................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 ........... 11, 14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 10, 11

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013) ................................. 11

*Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982) ................................................... 12

*Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) .................................................................................................................................. 18

*Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ................... 13

*Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ..................................... 13

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) . 12

*In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011) ................................... 19

*In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099 ............................... 15

*Isby v. Bayh*, 75 F.3d (7th Cir. 1996) ............................................................................................ 12

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ........................................................................ 11

*Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546 ......... 14

*Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) .................................................... 15

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) ..................................................... 11

*Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) .............................................................. 11

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ...................................... 19

*Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289 .............................................. 17

*Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .......................................................................................................................... 12, 13, 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d (7th Cir. 2006) ................................ 13

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ................... 11

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) ....................................................................................................................................... 16

*Young v. Rolling in the Dough, Inc*, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ........................ 16

**<u>Statutes</u>**

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 ......................................... 1

740 ILCS 14/1, *et seq.*................................................................................................................ 1

Fed. R. Civ. P. 23 ............................................................................................................. passim

**<u>Other Authorities</u>**

4 Newberg on Class Actions § 13 (5th ed.) ....................................................... 12, 19

## I.    __INTRODUCTION__

Plaintiff Timothy Thome ("Plaintiff" or "Thome") brought a putative class action against Defendant NOVAtime Technology, Inc. ("Defendant" or "NOVAtime") (collectively, the "Parties") asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Specifically, Plaintiff alleges NOVAtime, a third-party biometric device vendor, collected his and other similarly-situated individuals' fingerprints and hand scans when they used a NOVAtime timekeeping device at their respective place of employment.[1] However, Plaintiff alleges that in doing so, NOVAtime violated BIPA by failing to inform him and other similarly-situated individuals that it was collecting their biometric data in the first place, failing to seek or secure written consent prior to doing so, and failing to develop or comply with a policy available to the public for permanently destroying individuals' biometric identifiers and biometric information (collectively referred to herein as "biometric data"). NOVAtime denies Plaintiff's allegations, denies violation of any law, and denies all liability.

On March 8, 2021 (dkt. 90), the Court granted final approval of the Parties' original settlement that included a confession of judgment and an assignment of NOVAtime's, and its parent companies', rights under their insurance policies to Thome (for the benefit of the class) as well as an assignment to Thome (for the benefit of the class) of any contract or tort cause of action that NOVAtime, or its parent companies, could assert against their insurer for a denial of coverage. After extensive negotiations and with the assistance of the Honorable Mary Anne Mason (Ret.) of JAMS, the matter pertaining to the confession of judgment and assignment of rights has been resolved resulting in an additional $4,200,000.00 for the benefit of the class. Plaintiff now seeks

---

[1] This matter asserts BIPA claims against a biometric device vendor; thus, private entities that are often overlooked or released in employer BIPA class settlements for typically no additional value, with a few exceptions. *See e.g., Johnson v. Resthaven d/b/a Providence Life*, No. 2019-CH-1813 (Cir. Ct. Cook Cty.).

preliminary approval of the proposed Settlement Agreement, attached hereto as Exhibit 1.[2] Given the exceptional relief proposed by the Settlement Agreement, the Court should not hesitate to find that the Settlement Agreement is well within the range of possible approval. Accordingly, Plaintiff (for the benefit of the Thome Class) respectfully requests that the Court grant his motion for preliminary approval in its entirety, direct that the proposed Notice be disseminated to the Thome Class, and set a Final Approval Hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On August 14, 2019, Thome filed a class action lawsuit against NOVAtime and its parents and subsidiaries in the Circuit Court of Cook County, Illinois under Case No. 2019-CH-09380 (the "Underlying Lawsuit") asserting claims for alleged violations of BIPA. The Underlying Lawsuit was subsequently removed to the Northern District of Illinois, where it was assigned Case No. 1:19-cv-06256. (Dkt. 1.) Thereafter, on January 23, 2020, Thome filed an Amended Class Action Complaint in the Underlying Lawsuit alleging his employer used NOVAtime's biometric timeclocks and related software to authenticate and monitor his and other Illinois workers' time worked. (Dkt. 45 at ¶¶ 47-48.) As a result, Thome alleges NOVAtime collected or otherwise obtained his biometric data but failed to follow BIPA's notice and consent requirements to do so. (*Id.* at ¶¶ 49, 52-53, 77, 79-80, 86, 88-89, 96, 98.)

Shortly after the Underlying Lawsuit was filed, NOVAtime sought a defense and indemnity in connection with the Underlying Lawsuit from its insurance providers, including AXIS Insurance Company ("AXIS"). (*See* Settlement Agreement, p. 1.) However, AXIS denied NOVAtime's tender of the Underlying Lawsuit on February 12, 2020. (*Id.*) Taking into consideration the

---

[2] Unless otherwise defined herein, all capitalized terms used here will have the same meaning as defined in the Settlement Agreement.

potential significant exposure, NOVAtime and its parent companies were forced to negotiate a resolution of this matter without assistance from AXIS. The Parties, along with NOVAtime's parent companies, Ascentis Corporation and Ascentis Holdings, LP (collectively "Ascentis"), subsequently resolved the Underlying Lawsuit with NOVAtime and Ascentis agreeing to a Confession of Judgment in the total amount of $14.1 million on the condition that the Thome Class would not seek to collect $10 million of the judgment in exchange for an assignment of NOVAtime's and Ascentis' (collectively "Insureds") rights under the AXIS policies, as well as an assignment to the Thome Class of any contract or tort causes of action that the Insureds could assert against AXIS arising from AXIS's denial of coverage.[3] (*Id.* at pp. 1-2.) On October 2, 2020, the Parties entered into a "Class Action Settlement Agreement and Release" in the Underlying Lawsuit (the "Underlying Settlement Agreement") which addressed the manner in which notice was to be provided to putative class members, the administration of the settlement, the payment of $4,100,000.00 for the benefit of the class members upon final approval of the settlement, and the assignment of the Insureds' rights under the AXIS policies to the Thome Class. (*Id.* at 2.)

On March 8, 2021, the Court entered a Final Approval Order and Judgment in the Underlying Lawsuit, approving the Underlying Settlement Agreement and certifying with finality the Thome Class defined as follows:

> All individuals who were enrolled in a NOVAtime biometric timekeeping system and subsequently used a NOVAtime timeclock that utilized a fingerprint, hand geometry, or other biometric verification method in the State of Illinois between August 14, 2014, and October 19, 2020.
>
> Excluded from the Thome Class are: (1) any Judge or Magistrate presiding over this Action and members of their families, (2) the defendant, defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the defendant or its parents have a controlling interest, (3) persons who properly

---

[3] NOVAtime and Ascentis also assigned their rights under their National Fire Insurance Company of Hartford ("National Fire") policies too.

executed and filed a timely request for exclusion from the Thome Class, and (4) the
legal representatives, successors, or assigns of any such excluded persons.

(Dkt. 90.)

Thereafter, on July 2, 2021, Thome, individually and on behalf of all others similarly
situated, as Assignee of NOVAtime and Ascentis, filed a Complaint for Declaratory Judgment
against AXIS and National Fire[4] in the Circuit Court of Cook County, Chancery Division under
Case No. 2021-CH-03259 ("Coverage Action"). (*See* Complaint for Declaratory Judgment
(exhibits omitted), attached as Exhibit 2.) The Coverage Action sought recovery from AXIS for
the amounts allegedly owed to the Thome Class under the Underlying Settlement Agreement and
asserted by the Thome Class against AXIS, which included a breach of duty to defend under the
AXIS policies, estoppel, and a violation of Section 155 of the Illinois Insurance Code. (*Id.*) After
completing both written and oral discovery as well as participating in extensive motion practice,[5]
the Parties agreed, in an effort to conserve resources and focus their efforts on possibly resolving
the Coverage Action, to hold-off on briefing their respective motion for summary judgment while
the Parties participate in a mediation held on July 20, 2023, with the Honorable Judge Mason (Ret.)
of JAMS. As a result of the Parties' extensive negotiations and with the assistance of Judge Mason,
their efforts at the mediation culminated in an agreement in principle and together they drafted a
settlement agreement, fully executed on January 5, 2024, and attached hereto as Exhibit 1. On
February 6, 2024, the Court granted Plaintiff's unopposed motion to reinstate the proceedings in
this matter for additional settlement purposes only, in order to preside over the distribution of
additional notice and settlement funds to the previously established Thome Class. (Dkt. 93.)

---

[4] National Fire was subsequently dismissed from the Coverage Action.

[5] The Parties filed cross-motions for summary judgment on June 16, 2023, that are currently pending before
the court in the Coverage Action.

### III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the settlement are set forth in the Settlement Agreement, and are briefly summarized here:

#### A.    Settlement Class

The "Settlement Class" remains the same as the previously certified Thome Class, as noted above. The "Settlement Class", "Settlement Class Members", or "Thome Class" refer to all individuals who were enrolled in a NOVAtime biometric timekeeping system and subsequently used a NOVAtime timeclock that utilized a fingerprint, hand geometry, or other biometric verification method in the State of Illinois between August 14, 2014, and October 19, 2020. (Dkt. 90.)

#### B.    Settlement Fund.

The Settlement Agreement provides that AXIS agrees to pay $4,200,000.00 for the benefit of the Thome Class. The payment shall be transmitted to the Escrow Account established by the Settlement Administrator directed by the Plaintiff and Class Counsel and approved by the Court for purposes of funding Approved Claims. Within seven calendar days of the Final Approval Hearing, AXIS and/or its insurer shall transmit $4,200,000.00 to the Escrow Account. The Settlement Fund shall satisfy all monetary obligations of AXIS under the Settlement Agreement, including Settlement Payments, Settlement Administration Expenses, a Fee Award, an Incentive Award, taxes, and any other payment or other monetary obligation contemplated by the Settlement Agreement. (*See* Settlement Agreement, p. 5.)

#### C.    Claim Form.

The document substantially in the form attached as Exhibit A to the Settlement Agreement, as approved by the Court. The Claim Form, which shall be completed by Settlement Class Members who wish to file a claim for a Settlement Payment, shall be available in paper and

electronic format. The Claim Form will require claiming Settlement Class Members to provide the following information: (i) full name, (ii) current U.S. Mailing address, (iii) current contact telephone number and email address, and (iv) a statement that he or she scanned his or her finger or hand as part of an employer's timekeeping system in the State of Illinois between August 14, 2014, and October 19, 2020. The Claim Form will not require notarization but will require affirmation that the information supplied is true and correct to the best of the Class Member's knowledge. The online Claim Form will provide Class Members with the option of having their Settlement Payment transmitted to them electronically through Venmo, Zelle, PayPal, or a check. Class Members who submit a paper Claim Form that is approved will be sent a check via U.S. Mail. All Settlement Class Members who already submitted an Approved Claim in the Underlying Settlement Agreement will not need to submit another Claim Form to be eligible for a Settlement Payment here. Rather, all Settlement Class Members who submitted an Approved Claim in the Underlying Settlement Agreement will automatically receive their *pro rata* share of the net Settlement Fund. (*See* Settlement Agreement, pp. 3-4.)

**D.  Approved Claim.**

A Claim Form submitted by a Settlement Class Member that is (a) timely and submitted in accordance with the directions on the Claim Form and the terms of the Settlement Agreement, (b) is fully completed and physically signed or electronically signed by the Settlement Class Member, and (c) satisfies the conditions of eligibility for a Settlement Payment as set forth in the Settlement Agreement. (*See* Settlement Agreement, p. 3.)

**E.  Methods and Form of Notice.**

The form and methods of Notice will be largely the same as in the Underlying Settlement Agreement. Importantly, Settlement Class Members who already submitted an Approved Claim

in the Underlying Settlement Agreement will not need to submit another Claim Form to be eligible for a Settlement Payment from the Settlement Agreement. Rather, Settlement Class Members who previously submitted an Approved Claim in the Underlying Settlement Agreement will automatically receive their *pro rata* portion of the net Settlement Fund as provided in the Settlement Agreement. Settlement Class Members who did not previously submit an Approved Claim will have a second opportunity to do so to be entitled to a Settlement Payment here. Claim Forms will be made available to the Settlement Class in both paper and electronic format.

To reach as many potential Settlement Class Members as possible, the Settlement Administrator will provide the best notice practicable, including: (1) direct notice, attached as Exhibit C to the Settlement Agreement, via First Class U.S. Mail and e-mail, where available, and (2) internet notice, attached as Exhibit D to the Settlement Agreement, via the Settlement Website that will be developed, hosted, administered, and maintained by the Settlement Administrator. The Settlement Website will provide access to relevant settlement administration documents, including the Notice, relevant court filings, and the ability to submit Claim Forms online. (*See* Settlement Agreement, pp. 6-7.)

**F. No Exclusion or Objection Procedures.**

Because Settlement Class Members previously had an opportunity to exclude themselves from the Underlying Settlement Agreement and object to its approval, those who did not already do so will not have an opportunity to do so again. The Underlying Settlement Agreement has been finally approved by this Court and there is no basis for a member of the Settlement Class to exclude themselves or object to the Settlement Agreement, which simply provides additional funds for a previously approved settlement and a previously certified settlement class.

### G. Release of Liability.

In consideration of the payment of the Settlement Fund and the releases, agreements, and covenants contained in the Settlement Agreement, the Thome Plaintiffs, on their own behalf and on behalf of all of their past, present, and future agents, representatives, trustees, employees, attorneys, partners, successors, heirs, executors, administrators, principals, assigns, and all other persons claiming rights through them, covenant and agree to fully, irrevocably and forever release and discharge AXIS from any and all claims, causes of action, liabilities, obligations, demands, suits, debts, sums of money due or owed, expenses, damages, attorneys' fees, torts, injuries or losses, of whatever kind or character, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, absolute, fixed, conditional or contingent, and whether arising from contract, tort or otherwise, arising out of or in connection with: the Underlying Lawsuit, the Underlying Settlement Agreement, the Coverage Action, and the AXIS policies as described herein. (*See* Settlement Agreement, p. 9.)

## IV.    THE PROPOSED SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed Settlement Agreement for purposes of disseminating Notice to the Settlement Class;

2.    Approve the form and content of the Notice and the method of its dissemination to members of the Settlement Class; and

3.    Schedule a Final Approval Hearing to consider its fairness, reasonableness and adequacy, to consider the application for a Fee Award and Incentive Award to the Class Representative, and to consider whether the Court shall issue a Final Approval Order approving the Settlement Agreement and dismissing the Action with prejudice.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22 *et seq.* (4th ed. 2002). This process safeguards Settlement Class Members' due process rights and enables the Court to fulfill its role as guardian of class interests. With this

Motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving the proposed Notice, and ordering its distribution.

Plaintiff respectfully proposes that the Court issue an order setting the following schedule ("Preliminary Approval Order"):

1. **Notice Date:** Within 14 calendar days of entry of the Preliminary Approval Order, Notice shall be sent via all available methods and form as described above and more thoroughly described in the Settlement Agreement (substantially in the form of Exhibits C and D to the Settlement Agreement). For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the Notice mailing to be re-mailed to those Settlement Class Members. All Claim Forms (substantially in the form of Exhibit A of the Settlement Agreement) must be postmarked and/or submitted on the Settlement Website within 63 days following the Notice Date. (*See* Settlement Agreement, p. 3.)

2. **Submission of Papers in Support of an Incentive Award, Settlement Administration Expenses, and a Fee Award:** Must be filed no later than seven days prior to the date of the Final Approval Hearing.

3. **Submission of Papers in Support of Final Approval of Settlement:** Must be filed no later than seven days prior to the date of the Final Approval Hearing.

4. **Final Approval Hearing:** Will occur approximately 100 days after entry of the Preliminary Approval Order, or such other date as ordered by the Court.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing Notice and submitting a Claim Form will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process under the Settlement Agreement.

|   | *Event* | *Timing* |
|---|---------|----------|
| 1. | Motion for Preliminary Approval Filed | March 8, 2024 |
| 2. | Settlement Administrator to Issue Class Notice | Within 14 calendar days after entry of the Preliminary Approval Order. |

| 3. | Deadline for Submitting a Claim Form | 63 days after the Notice Date. |
|---|---|---|
| 4. | Final Approval Hearing | Approximately 100 days after preliminary approval. |
| 5. | Effective Date | The first business day after the date on which the Final Judgment becomes final. For purposes of this definition, the Final Judgment becomes "final" when the Final Approval Order has been entered on the docket. In the event that the Court does not approve the Settlement Agreement and/or does not enter a Final Judgment, or in the event that entry of the Final Judgement is reversed on appeal, then there shall be no Effective Date and this Settlement Agreement shall be null and void. |
| 6. | AXIS to Fund the Settlement | Within 7 calendar days of the Final Approval Hearing, AXIS and/or its insurer shall transmit $4,200,000.00 to the Escrow Account. |
| 7. | Settlement Administrator to Distribute Funds to Class Members | Within 28 calendar days of the Effective Date. |

## V.     THE PROPOSED SETTLEMENT SHOULD BE PRELIIMINARILY APPROVED

Before the Court can preliminarily approve a proposed class settlement agreement and direct notice to the settlement class, it must preliminarily certify the class for settlement purposes, which requires a finding that the Court "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). As discussed above, the Court has already taken these steps in the Underlying Settlement Agreement and not only already preliminarily approved the Thome Class (dkt. 76), but has also finally approved the Thome Class in Underlying Settlement Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure for settlement purposes. (Dkt. 90.) The Settlement Class here remains the same as the Thome Class in the Underlying Settlement Agreement. The purpose of preliminary approval here is for additional settlement purposes only and for this Court to preside over the distribution

of additional notice and settlement funds to the previously established Thome Class. (Dkt. 93.) The Court need not reevaluate the requirements of Rule 23(a)[6] and (b)(3)[7] as it has already done so when it finally approved the Thome Class in the Underlying Settlement Agreement.

## VI.     **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198-99); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

---

[6] The Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013).

[7] Additionally, because the Settlement Agreement releases claims for money damages, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*, 521 U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process—preliminary and final approval—which was codified under Rule 23(e) relatively recently. Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed.). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While class action settlements may be favored by the courts, a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).[8]

---

[8] Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of

The proposed Settlement Agreement will provide additional outstanding monetary relief to Settlement Class Members. It should be preliminarily approved.

### A. Plaintiff and Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

Here, Plaintiff has been involved in nearly every aspect of the Coverage Action, including by assisting in responding to written discovery, conferring with counsel throughout the litigation, participating in the mediation process, and reviewing and approving the Settlement Agreement before signing it. (*See* Exhibit 3, Declaration of Andrew C. Ficzko ("Ficzko Decl."), ¶12.) Without

---

opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

Plaintiff stepping up to represent the class and taking on these tasks, the relief secured for the Settlement Class in the Coverage Action wouldn't have been possible. Given his efforts and aligned interest with the class, there can be no doubt that Plaintiff has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Class Counsel's performance in the Coverage Action demonstrates that their representation has been beyond adequate, especially when considering (i) the quality of discovery conducted and (ii) the benefits of the Settlement Agreement, without even taking into consideration the Underlying Settlement Agreement, compared to similar privacy settlements, including those under BIPA. By the time the Settlement Agreement was agreed to in principle, the discovery completed by Class Counsel ensured that they had adequate information to assess the strength of the case and negotiate a fair deal. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). The issues in the Coverage Action have crystallized sufficiently for Plaintiff and his counsel to assess the strengths and weaknesses of their negotiating position and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016).

Next, the monetary relief[9] achieved by Class Counsel in the Settlement Agreement excels in comparison to other statutory privacy settlements, including many BIPA settlements. The Settlement Agreement here provides material benefits to the Settlement Class: all members of the

---

[9] Class Counsel secured $4,100,000.00 for the benefit of the Settlement Class in the Underlying Settlement Agreement. The minimum gross amount recovered by each Settlement Class Member who submitted an Approved Claim in the Underlying Settlement Agreement was approximately $587, less fees, expenses, and costs. (Dkt. 84 at 11.)

Settlement Class who already submitted an Approved Claim in the Underlying Settlement Agreement will not need to submit another Claim Form to be eligible for a Settlement Payment from the Settlement Agreement but rather will automatically receive their *pro rata* share of the net Settlement Fund from the Settlement Agreement. The members of the Settlement Class who did not previously submit an Approved Claim will have a second opportunity to do so to be entitled to a Settlement Payment here. The monetary relief secured by the Settlement Agreement dwarfs recoveries in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly secured no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement). Some BIPA settlements have also depressed the amount defendants have to pay with credit monitoring, caps on the amount claiming class members can recover, and reversion of unclaimed funds. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty.) (providing credit monitoring only and no monetary relief); *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) (paying a cap of $270 to individuals who filed claims and reverting the remainder to defendant). Thus, the relief secured by this non-reversionary Settlement Agreement is extraordinary.

If the Settlement Agreement is preliminarily approved, the Settlement Class will reap its valuable benefits thanks to Plaintiff's and Class Counsel's hard work pursuing the Coverage Action and representing their interests. This factor is well satisfied.

### B. The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. Plaintiff actively litigated the Coverage Action for over two and a half years, including substantial motion practice, significant written and oral discovery, and a full-day mediation with the Honorable Judge Mason (Ret.) of JAMS. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching settlement). The Parties participated in a mediation with the Honorable Judge Mason, and as a result of their extensive negotiations and with the assistance of Judge Mason, their efforts culminated in an agreement to resolve this matter in principle on July 20, 2023. (Ficzko Decl. ¶9.) The Parties then spent the next several months drafting and negotiating the finer deal points of the Settlement Agreement before fully executing it on January 5, 2024. (*Id.*) *See Young v. Rolling in the Dough, Inc*, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (finding the settlement agreement is "clearly" the product of arm's-length negotiations after it was agreed to after a contested motion, extensive discovery and discovery disputes, and a settlement conference).

The arm's-length nature of these negotiations is further confirmed by the Settlement Agreement itself: it is non-reversionary, provides significant cash payments to Settlement Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest

16

something other than an arm's length negotiation").

For these reasons, there should be no question that the Settlement Agreement was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C. The Settlement Agreement Treats Settlement Class Members Equitably.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, those members of the Settlement Class who already submitted an Approved Claim in the Underlying Settlement Agreement will not need to submit another Claim Form to be eligible for a Settlement Payment since they previously actively participated in the Underlying Settlement Agreement. (*See* Settlement Agreement, p. 4.) Rather, all members of the Settlement Class who previously submitted an Approved Claim in the Underlying Settlement Agreement will automatically receive their *pro rata* portion of the net Settlement Fund from the Settlement Agreement. (*Id*.) The members of the Settlement Class who did not previously submit an Approved Claim will now have a second opportunity to do so to be entitled to a Settlement Payment here. (*Id*. at 3.) For convenience, Claim Forms will be made available to the Settlement Class in both paper and electronic format. (*Id*.)

Likewise, the provision of an Incentive Award to Plaintiff for actively participating in the resolution of the Coverage Acton on behalf of the Settlement Class is consistent with the equitable treatment of class members. The requested $7,500 Incentive Award is not only modest relative to the Settlement Fund that Plaintiff has helped secure for the Settlement Class, it also reflects the

significant work he has done for the Settlement Class, which as described above, included conferring with counsel, answering written discovery, and participating in the settlement process. Given that Plaintiff's efforts were key to securing the outstanding relief provided by the Settlement Agreement, the modest proposed Incentive Award is fully consistent with equity. Because the Settlement Agreement treats each member of the Settlement Class equitably, this factor is well satisfied.

**D. The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.**

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors preliminarily demonstrate that the relief provided by the Settlement Agreement is excellent—well beyond adequate—and should be approved.

**1. The cost, risk, and delay of further litigation compared to the Settlement Agreement's benefits favors preliminary approval.**

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursuing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement Agreement here warrants preliminary approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals and the risk that comes along with it. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in

settlement today is worth more than a dollar obtained after a trial and appeals years later."). The Parties, for example, currently have cross-motions for summary judgment pending in the Coverage Action. The determination of the complex factual and/or legal issues by the Court that were presented in each Party's respective motion is an inherently uncertain proposition, particularly compared with the certain relief offered by the Settlement Agreement. The Settlement Agreement provides excellent relief to the Settlement Class Members now, avoiding years of delay to resolve these questions.

Protracted litigation would also consume significant resources, including the time and costs associated with briefing and arguing the pending dispositive motions, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement Agreement offers immediate—and substantial—monetary relief to the Settlement Class while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

## 2. The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). The proposed Settlement Agreement satisfies this

factor by relying on already-proven, well-established, effective methods for issuing notice to the Class Members and distributing the proceeds of the Settlement Agreement. The Settlement Agreement contemplates a notice plan that incorporates traditional direct notice (*i.e.,* First Class U.S. mail and e-mail) as well as internet notice (*i.e.,* the Settlement Website), which is designed to reach as many Class Members as possible as previously demonstrated in the Underlying Settlement Agreement.[10] Prior to mailing the Notice, the Settlement Administrator will update the class list using the U.S. Postal Service's database of verifiable mailing addresses and the National Change-of-Address database. This distribution method has proven effective and supports approval.

### 3. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[11] considers the adequacy of the relief provided to the class taking into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement Agreement is preliminarily approved, Class Counsel plan to petition the Court for an award of reasonable attorneys' fees after the Settlement Class has received notice of the Settlement Agreement. The Settlement Agreement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method), and its limit on attorneys' fees (*i.e.*, no more than 33.33% of the non-reversionary gross

---

[10] JND Legal Administration ("JND") is the proposed Settlement Administrator here and was also the Settlement Administrator in the Underlying Settlement Agreement. In the Underlying Settlement Agreement, JND received data for a total of 68,213 Class Members. Of the 67,701 Notices mailed to Class Members, only 586 Notices remained undeliverable with no valid mailing addresses. JND also e-mailed Notice to 16,389 Class Members. Of the 16,389 e-mailed Notices, 3,398 Notices remained undeliverable with no valid e-mail address.

[11] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement Agreement. (Ficzko Decl. ¶11.) Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

Settlement Fund) is reasonable and predicated on the outstanding relief provided to the Settlement Class. (*See* Settlement Agreement, p. 4.) Accordingly, that the Settlement Agreement permits the Court to award 33.33% of the fund in attorneys' fees is more than appropriate. Finally, if approved, the Settlement Agreement provides that attorneys' fees will be paid within three business days after the Effective Date. (*See* Settlement Agreement, p. 4.) These terms are reasonable and should be preliminarily approved.

For these reasons, Plaintiff and Class Counsel submit that the monetary relief provided by the Settlement Agreement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED IN FORM AND SUBSTANCE

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Settlement Class must describe in plain language the nature of the action, the claims and defenses at issue, and the binding effect of judgment. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Agreement contemplates a comprehensive Notice plan. The form and methods of Notice will be largely the same as in the Underlying Settlement Agreement. As previously noted, Settlement Class Members who already submitted an Approved Claim in the Underlying Settlement Agreement will not need to submit another Claim Form to be eligible for a Settlement Payment from the Settlement Agreement. (*See* Settlement Agreement, p. 6.) Rather,

Settlement Class Members who previously submitted an Approved Claim in the Underlying Settlement Agreement will automatically receive their *pro rata* portion of the net Settlement Fund from the Settlement Agreement. (*Id.*) Settlement Class Members who did not previously submit an Approved Claim will have a second opportunity to do so to be entitled to a Settlement Payment. Claim Forms will be made available to the Settlement Class in both paper and electronic format. (*Id.*) To successfully reach as many potential Settlement Class Members as possible, the Settlement Administrator will provide the best notice practicable, including: (1) direct notice via First Class U.S. Mail and e-mail, where available, and (2) internet notice via the Settlement Website that will be developed, hosted, administered, and maintained by the Settlement Administrator. (*Id.* at 7.) The Settlement Website will provide access to relevant settlement administration documents, including the Notice, relevant court filings, and the ability to submit Claim Forms online. (*Id.*)

Because the proposed Notice plan effectuates Notice in the best practicable manner under the circumstances and fully apprises Settlement Class Members of their rights, it comports with both Rule 23 and Due Process. Consequently, the Court should preliminarily approve the Parties' proposed Notice plan.

## VIII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Settlement Agreement, (ii) preliminarily approving the form and content of the Notice to the members of the Settlement Class, (iii) enter the proposed Preliminary Approval Order, attached hereto as Exhibit 4, (iv) scheduling a final fairness hearing in this matter, and (v) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**Timothy Thome**, individually, and on behalf of the Thome Class

Dated: March 8, 2024

By: */s/ Andrew C. Ficzko___*
One of Plaintiff's attorneys

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**Stephan Zouras, LLP**
222 W. Adams Stret
Suite 2020
Chicago, Illinois 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Brandon M. Wise
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
bwise@peifferwolf.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 8, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Andrew C. Ficzko*