## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TIMOTHY THOME, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-06256 |
| *Plaintiff,* | Honorable Judge Matthew F. Kennelly |
| v. | |
| NOVATIME TECHNOLOGY, INC., | |
| *Defendant.* | |

## PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

III.  SUMMARY OF SETTLEMENT TERMS ................................................................... 3

    A.  Class Definition. ................................................................................................ 3

    B.  Settlement Fund. ................................................................................................ 3

    C.  Release. .............................................................................................................. 4

    D.  Settlement Administration. ................................................................................ 5

    E.  No Exclusion or Objection Procedures. ............................................................ 7

IV.  THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23.... 8

V.  THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED
BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF
A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS. .......................................... 8

    A.  The Settlement Is Fair, Reasonable, and Adequate. ......................................... 9

    B.  The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and
Attendant Risks (First Factor). ...................................................................... 10

    C.  Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second
Factor). ............................................................................................................ 12

    D.  The Reaction of the Class Has Been Positive (Third Factor). ....................... 13

    E.  Competent Counsel for All Parties Endorse this Agreement (Fourth Factor). ............ 14

    F.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
Responsibly (Fifth Factor). ............................................................................. 15

VI.  CONCLUSION ........................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)................................................. 9

*Armstrong v. Cty. of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ................................................................................................... 14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ................................................................................................. 14

*Donovan v. Estate of Fitzsimmons*,
  778 F.2d 298 (7th Cir. 1985) ................................................................................................... 13

*EEOC v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ............................................................................................... 9, 11

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ..................................................................................................... 9

*Gascho v. Global Fitness Holdings*, LLC
  822 F.3d 269 (6th Cir. 2016) ................................................................................................... 13

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ................................................................................................... 14

*Goldsmith v. Tech Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................................ 13

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................................... 12

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ......................................................................................... 9, 10, 14

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
  834 F.2d 677 (7th Cir. 1987) ................................................................................................... 12

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F.3d 781 (7th Cir. 2004) ..................................................................................................... 9

*Patterson v. Stovall*,
  528 F.2d 108 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873
  (7th Cir. 1998)........................................................................................................................... 9

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ................................................................................................... 14

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ................................................................................................... 13

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................................... 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ..................................................................................................... 9

*Theodore Broomfield b. Craft Brew All., Inc.*,
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .......................................................................... 13

*Williams v. Quinn*,
  748 F. Supp. 2d 892 (N.D. Ill. 2010) ...................................................................................... 10

*Young v. Rolling in the Dough, Inc*,
  2020 WL 969616 (N.D. Ill. Feb. 27, 2020) .............................................................................. 9

**Statutes**

Illinois Biometric Information Privacy Act,
  740 ILCS 14/1 ................................................................................................................ 1

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 8, 9

**Other Authorities**

Herbert B. Newberg & Alba Conte,
*Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002) ................................... 17

## I.    **INTRODUCTION**

Plaintiff Timothy Thome ("Named Plaintiff", "Class Representative", or "Thome"), brought a putative class action against Defendant NOVAtime Technology, Inc., ("NOVAtime" or "Defendant"), asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* The Court preliminarily approved this $4,200,000.00 non-reversionary settlement on March 15, 2024. (Dkt. 103.)

This case is different than most other BIPA cases that are typically filed against employers. Rather, the Defendant here is a manufacturer and distributor of biometric timeclocks and related software used by companies throughout the state of Illinois. Plaintiff alleged NOVAtime collected or otherwise obtained his and other similarly-situated individuals' biometric identifiers and biometric information (collectively, "biometrics" or "biometric data") when they used a NOVAtime biometric device (including software) at their respective place of employment. However, before collecting or otherwise obtaining his biometric data, Plaintiff alleges NOVAtime failed to: (1) develop and adhere to a publicly-available retention schedule and guidelines for permanent destruction of his biometric data, as required by BIPA; (2) inform him in writing of the purposes and length of time for which his biometric data was being collected, stored, and used; (3) provide Plaintiff (nor did he execute) a written release for NOVAtime to collect, store, or use his biometric data, as required by BIPA, or (4) ask for, nor did he give, his consent before disclosing, redisclosing, or otherwise disseminating his biometric data to a third party, as required by BIPA.

The Court has already granted final approval of the Parties' original settlement that included a confession of judgment and an assignment of NOVAtime's and its parent companies'

rights to Thome (for the benefit of the Class[1]) against their insurers for the denial of coverage (*i.e.* "Coverage Action"). Plaintiff now seeks final approval of the Coverage Action Settlement.

As fully explained below, the Settlement is fair, reasonable, and adequate under the governing legal standards and satisfies all criteria for final approval. The Parties respectfully request this Court: (1) grant Final Approval of the Settlement, including the release of claims as set forth therein, and (2) enter the Proposed Final Approval Order, attached hereto as Exhibit 2.

The Court has already preliminarily approved the Parties' non-reversionary Settlement. (Dkt. 103.) In compliance with the Court's Preliminary Approval Order, the multi-pronged notice plan was effectuated, directing notice to the Settlement Class. The response has been one of overwhelming support: 6,271 Class Members filed claims in this matter.[2] With such overwhelming results and for the reasons stated below, the Court should grant final approval of the Settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in Plaintiff's Unopposed Motion for and Memorandum in Support of Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") (Dkt. 100) and in the [Corrected] Class Counsel's Unopposed Petition for Approval of Attorneys' Fees, Costs, and Service Award to the Class Representative ("Fee Petition") (Dkt. 105), the Court granted final approval of the Parties' original settlement that included a confession of judgment and an assignment of NOVAtime's, and its parent companies', rights under their insurance policies to Thome (for the benefit of the Class) as well as an assignment to Thome (for the benefit of the Class) of any contract or tort cause of action that NOVAtime, or its parent companies, could assert

---

[1] Unless otherwise defined herein, all capitalized terms used herein will have the same meaning as defined in the Settlement Agreement ("Settlement" or "Settlement Agreement"), attached hereto as Exhibit 1.

[2] This is in addition to the 6,997 Class Members that previously submitted an Approved Claim and did not need to submit a second Claim Form in order to be entitled to a Settlement Payment here. (Dkt. 84 at 11.)

against their insurers for a denial of coverage. After extensive negotiations and with the assistance of the Honorable Mary Anne Mason (Ret.) of JAMS during a full-day mediation, the Coverage Action has been resolved resulting in an additional $4,200,000.00 for the benefit of the Class. Plaintiff filed his Preliminary Approval Motion on March 8, 2024; the Court granted Plaintiff's Preliminary Approval Motion on March 15, 2024. (Dkt. 103.)

### III.   SUMMARY OF SETTLEMENT TERMS

The terms of the settlement are set forth in the Settlement Agreement, and are briefly summarized here:

#### A.   Class Definition.

The "Settlement Class" remains the same as the previously certified Thome Class in the Underlying Settlement Agreement. The "Settlement Class", "Settlement Class Members", or "Thome Class" refer to all individuals who were enrolled in a NOVAtime biometric timekeeping system and subsequently used a NOVAtime timeclock that utilized a fingerprint, hand geometry, or other biometric verification method in the state of Illinois between August 14, 2014, and October 19, 2020. (Ex. 1, Settlement p. 2.) Excluded from the Settlement Class are : (1) any Judge or Magistrate presiding over the Action and members of their families, (2) the defendant, defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the defendant or its parents have a controlling interest, (3) persons who previously properly executed and filed a timely request for exclusion from the Settlement Class, and (4) the legal representatives, successors or assigns of any such excluded persons.

#### B.   Settlement Fund.

The Settlement provides that NOVAtime's insurance provider, AXIS Insurance Company ("AXIS"), agrees to pay $4,200,000.00 for the benefit of the Thome Class. The payment shall be

transmitted to the Escrow Account established by the Settlement Administrator and approved by the Court for purpose of funding Approved Claims. Within seven calendar days of the Final Approval Hearing, AXIS and/or its insurer shall transmit $4,200,000.00 to the Escrow Account. The Settlement Fund shall satisfy all monetary obligations of AXIS, including Settlement Payments, Settlement Administration Expenses, a Fee Award, an Incentive Award, taxes, and any other monetary obligation contemplated by the Settlement. (Ex. 1, Settlement, p. 5.)

Importantly, only those Class Members who did not previously submit a Claim Form are required to submit an Approved Claim to be entitled to a Settlement Payment. All Class Members who previously submitted an Approved Claim will automatically receive a *pro rata* share of the Settlement Fund. (*Id.* p. 6.) The Settlement Administrator will send the Settlement Payments to each participating Class Member by electronic deposit or by check via First Class U.S. mail to the addresses provided and/or previously provided on the Approved Claim. (*Id.*) To the extent that a check issued to a Class Member is not cashed within 90 calendar days after the date of issuance, the check will be void. (*Id.*) Uncashed checks will be distributed to the *cy pres* Illinois Equal Justice Foundation[3], upon the Court's approval. (*Id.*)

### C. Release.

In consideration of the payment of the Settlement Fund and the releases, agreements, and covenants contained in the Settlement, the Thome Plaintiffs, on their own behalf and on behalf of all of their past, present, and future agents, representatives, trustees, employees, attorneys, partners, successors, heirs, executors, administrators, principals, assigns, and all other persons claiming rights through them, covenant and agree to fully, irrevocably and forever release and

---

[3] The Illinois Equal Justice Foundation was created in 1999 pursuant to the Illinois Equal Justice Act and provides funding to nonprofit organizations that offer free legal assistance and other resources to those unable to afford legal representation.

discharge AXIS from any and all claims, causes of action, liabilities, obligations, demands, suits, debts, sums of money due or owed, expenses, damages, attorneys' fees, torts, injuries or losses, of whatever kind or character, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, absolute, fixed, conditional or contingent, and whether arising from contract, tort or otherwise, arising out of or in connection with: the Underlying Lawsuit, the Underlying Settlement Agreement, the Coverage Action, and the AXIS policies as described herein. (Ex. 1, Settlement, p. 9.)

### D. Settlement Administration.

The Parties engaged JND Legal Administration ("JND" or "Settlement Administrator") as the Settlement Administrator to execute a comprehensive Notice plan and to draft and mail settlement checks. (Exhibit 3, Supplemental Declaration of Marcia A. Uhrig Regarding Notice Administration ("Uhrig Decl."), at ¶ 2.) JND utilized the same Class data that was previously provided regarding the Underlying Settlement Agreement. (Ex. 3, Uhrig Decl. at ¶ 4.) To reach as many potential Class Members as possible, JND provided the best notice practicable, including: (1) direct notice via First Class U.S. mail and e-mail, where available, and (2) internet notice via the Settlement Website that was developed, hosted, administered, and maintained by JND. (*Id.* at ¶¶ 5, 7, 11.) Prior to issuing the Notice, JND performed address research using the United States Postal Service ("USPS") National Change of Address ("NCOA") database to obtain the most current mailing address information for the Class Members. (*Id.* at ¶ 4.) JND was able to identify 68,369 Class Members. (*Id.*) Of the 68,369 Class Member records, JND was able to determine that 6,997 Class Members previously submitted an Approved Claim, meaning 61,372 Class Members had a second opportunity to submit a Claim Form to receive a Settlement Payment. (*Id.* at ¶ 4.)

On March 28, 2024, JND sent the Court-approved Notice and Claim Form via First Class U.S. mail to 67,857 Class Members. (*Id.* at ¶ 5.) The Notice informed Class Members of their rights as well as the deadline for filing a claim if they did not previously submit an Approved Claim. (*Id.*) Thereafter, JND tracked 11,404 Notices that were returned as undeliverable without a forwarding address and 462 Notices that were returned with a forwarding address. (*Id*. at ¶ 6.) JND re-mailed the 462 Notices to the forwarding address provided by the USPS and remailed 5,440 Notices to updated addresses obtained through advanced address research. (*Id.*)

On March 28, 2024, JND also emailed the Notice to 17,179 Class Members for whom a valid email address was available. (*Id*. at ¶ 7.) As of June 12, 2024, 1,859 emailed Notices were returned as undeliverable. (*Id.*) As of June 12, 2024, 51,155 Class Members were sent Notice by mail only, 476 Class Members were sent Notice by email only, 16,703 Class Members were sent Notice by both mail and email, and 36 Class Members did not receive Notice via email or mail as they did not have any valid contact details. (*Id.* at ¶ 8.)

In addition to sending direct Notice (where available) to the Class Members, JND re-established the Settlement Website which Class Members could visit to obtain information about the Action or submit a Claim Form online through an interactive online claim filing portal. (*Id.* at ¶ 11.) As of June 12, 2024, the Settlement Website has received 8,873 unique visitors and 20,727 pageviews. (*Id.*) Furthermore, JND re-established the Settlement e-mail address to assist Class Members who were seeking information about the Action, wished to update their address, or wanted to request a Notice or Claim Form to be mailed to them. (*Id*. at ¶ 12.) JND has received 358 such emails. (*Id.*) Finally, JND re-established a toll-free phone number Class Members could call to ask questions about the Settlement or request a re-mailing of the Notice or Claim Form. (*Id.* at ¶ 13.) JND has received 1,467 calls. (*Id.*)

On June 12, 2024, Class Counsel filed their Fee Petition.[4] (Dkt. 104.) However, due to a misunderstanding between Class Counsel and the Settlement Administrator, the information contained in Uhrig's (original) Declaration in support of the Fee Petition reflected the current status as of June 12, 2024. (Dkt. 104-5.) However, the Settlement Administrator, consistent with the terms of the Settlement, was still in the process of validating Claim Forms and had until June 13, 2024, or 14 calendar days after the Claims Deadline to do so.[5] (Ex. 3, Uhrig Decl. at ¶¶ 10, 15.) The Settlement Administrator's supplemental declaration, submitted herein, reflects the results of the administration process with the completion of the validation of submitted Claim Forms. (*Id.* at ¶ 15.) Thus, the Settlement Administrator reviewed all Claim Forms received and determined that there are 6,271 Approved Claims submitted by Class Members that were required to submit a claim to receive a payment, in addition to the 6,997 Class Members who previously submitted an Approved Claim. (*Id.*) Therefore, the Settlement Administrator anticipates that it will issue payments for at least 13,268 Class Members, or 19% of the total Class. (*Id.*) Thus, each participating Class Member will receive a net Settlement Payment in the amount of approximately $195.28. (*Id.* at ¶ 16.)

### E.      No Exclusion or Objection Procedures.

Class Members previously had an opportunity to exclude themselves from the Underlying Settlement Agreement and object to its approval. Therefore, those who did not already exclude

---

[4] On June 13, 2024, Class Counsel filed a [Corrected] Class Counsel's Unopposed Petition for Approval of Attorneys' Fees, Costs, and Service Award to the Class Representative to correct errors that occurred when converting the document from Word to a pdf. (Dkt. 105.)

[5] The total administration expenses in the amount of $155,481.55 for costs and expenses noted in Uhrig's original declaration was for expenses currently incurred in connection with current fees administrating the Settlement. (Dkt. 104-5.) However, the Settlement Administrator clarified in its supplemental declaration that in order to complete the administration of the Settlement and issue the payments to Class Members, it anticipates its total fees will not exceed $188,000.00. (Ex. 3, Uhrig Decl. at ¶ 14.)

themselves or object, did not have another opportunity to do so again.[6] The Underlying Settlement Agreement had been finally approved by this Court and there was no basis for a member of the Settlement Class to exclude themselves or object to the Settlement, which simply provides additional funds for the previously approved settlement and previously certified Thome Class.

## IV. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Under Rule 23(c)(2)(B), notice must provide:

[T]he best notice that is practicable under circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

As set forth above and demonstrated by the thoroughness of the Notices, the Parties' effort to effectuate notice to the Class Members meets the requirements of Rule 23(c)(2)(B). (*See* Notices, attached to Uhrig Decl. as Exhibits A and B.)

## V. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS.

Under Rule 23(e), court approval is required for class action settlements in order to ensure they are procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Courts have held that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10

---

[6] Only three Class Members requested exclusion and one Class Member objected to the Underlying Settlement Agreement three weeks after the Objection/Exclusion deadline had passed. (Dkt. 84 at 16.)

(N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Federal courts naturally favor the settlement of class action litigation." I*sby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020). As set forth in detail below, the proposed Settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA. Accordingly, the Settlement should be granted final approval.

### A. The Settlement Is Fair, Reasonable, and Adequate.

In approving a class action settlement under Rule 23, a court's review of the agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The court's duty is to evaluate "the general principles governing approval of class action settlements" not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted). However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). To do so, courts consider five factors, including the: (1) strength of plaintiff's case compared to the terms of the proposed settlement; (2) likely complexity, length, and expense of continued litigation; (3) amount of opposition; (4) opinion of competent counsel; and (5) stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Courts must view the

settlement in its entirety and not focus on any individual component. *Isby*, 75 F.3d at 1199.

**B.    The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).**

The Settlement is substantial considering AXIS's agreement to settle this case for $4,200,000.00. (Ex. 1, Settlement, p. 5.) To begin, only those Settlement Class Members who had not previously submitted a Claim Form were required to submit an Approved Claim to be entitled to a Settlement Payment. (*Id.,* p. 6.) All Settlement Class Members who previously submitted an Approved Claim will automatically receive a *pro rata* share of the Settlement Fund, less the Fee Award, Settlement Administration Expenses, and an Incentive Award to the Named Plaintiff. (*Id.*) Here, in addition to the previous 6,997 Class Members, 6,271 or more than 10% of those Class Members who did not previously submit a Claim Form have decided to participate in the Settlement and filed claims this second time around. (Ex. 3, Uhrig Decl. ¶ 15.) If the Fee Award, Settlement Administration Expenses, and the Incentive Award are approved, each participating Class Member, including those who previously submitted an Approved Claim, will receive a Settlement Payment in the amount of approximately $195.28.

When courts evaluate the strength of a plaintiff's case based on the merits and balanced against the proposed settlement, courts should refrain from drawing conclusions on issues which haven't been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less

than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

With the outcome of the litigation being far from certain, if the Parties were to proceed forward with litigating this matter, they would be required to brief the cross-motions for summary judgment pending in the Coverage Action. The court's determination of the complex factual and legal issues presented in each Party's respective motion is an inherently uncertain proposition, particularly compared with the certain relief offered by the Settlement. However, the Settlement provides excellent relief to the Settlement Class Members now, avoiding years of delay to resolve these questions. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). The Court's approval of the Settlement would allow Plaintiff and the participating Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. (*Id*. at 582.)

BIPA cases unquestionably involve largely matters of first impression and the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts were taken into consideration here. This Settlement—providing excellent monetary relief without delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's final approval. Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides substantial guaranteed monetary benefits now while maintaining Class Members' ability to pursue potential BIPA matters against their respective employers for the respective employer's own BIPA violations. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th

11

Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"). The Settlement Administrator will send each Settlement Class Member with an Approved Claim a Settlement Payment by electronic deposit or by check via First Class U.S. mail to the account or address provided on their respective Approved Claim within 28 days of the Effective Date. (Ex. 1, Settlement, p. 6.) All Settlement Payments will state on the face of the check that the check will expire and become null and void unless cashed within 90-calendar days after the date of issuance. (*Id*.) To the extent that a check issued to Settlement Class Members is not cashed within 90-calendar days after the date of issuance, the check will be void. (*Id.*) Uncashed checks will be distributed to the *cy pres* Illinois Equal Justice Foundation, upon approval by the Court. (*Id*.) Settlement Class Members may request replacement checks within the 90-calendar day period after initial issuance, but such checks will not extend the 90-calendar day check cashing period from the date checks were originally issued. (*Id*. p. 7.)

Here, the proposed Settlement ensures that participating Class Members will receive a Settlement Payment, and for those Class Members who previously submitted an Approved Claim a second Settlement Payment, that is reasonable and consistent with the established facts as applied to the governing law. And, the Settlement ensures that the participating Settlement Class Members will receive significant monetary relief *now.* In light of the significant recovery this Settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

### C. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

The complexity, length, and expense of litigation that will be avoided by the proposed Settlement is the second factor to be considered, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial

and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). Here, the Settlement allows participating Settlement Class Members to receive immediate money, avoiding lengthy and costly additional litigation.

In attaining a settlement prior to briefing and ruling on the pending cross-motions for summary judgment or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the Settlement Class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lay ahead for the Parties would be potentially years more of litigation—all of which could pose the possibility of significant stumbling blocks for Plaintiff and the Class. Although Plaintiff may be confident on the merits, continued litigation is subject to considerable risks and costs if the case is not settled as well as a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). The proposed Settlement provides immediate benefits to all participating Settlement Class Members and should be finally approved.

## D.      The Reaction of the Class Has Been Positive (Third Factor).

The Settlement Class's reaction to the Settlement has been overwhelmingly positive and weighs strongly in favor of final approval. The number of Settlement Class Members that elected to participate this second time around was excellent, and the claims rate was at the high range of rates in comparable class settlements. *See Theodore Broomfield b. Craft Brew All., Inc.,* 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving class action with claims rate of 2%, noting that claims rates in larger settlements are often below 5%); *Gascho v. Global Fitness Holdings*, LLC 822 F.3d 269, 290 (6th Cir. 2016) (discussing expert testimony that response rates in claims-made

class action settlements "generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent[.]"). The strong response rate demonstrates overwhelming support for the Settlement. Thus, this factor also favors final approval of the Settlement.

### E. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Cty. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980) (overruled on other grounds). Courts cannot, though, rely solely on that opinion. *See Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. Plaintiff actively litigated the Coverage Action for over two and a half years, including substantial motion practice and significant written and oral discovery. (Exhibit 4, Declaration of Andrew C. Ficzko, ("Ficzko Decl."), ¶ 10; Exhibit 5, Declaration of Brandon M. Wise, ("Wise Decl."), ¶ 8.) The issues developed sufficiently for Class Counsel to assess the strengths and weaknesses of the claims and evaluate the appropriateness of any proposed resolution. (Ex. 4, Ficzko Decl. ¶ 16; Ex. 5, Wise Decl. ¶ 10.) The Parties participated in a mediation with Judge Mason, and as a result of their extensive negotiations and with the assistance of Judge Mason, their efforts resulted in the Settlement. (Ex. 4, Ficzko Decl. ¶ 11; Ex. 5, Wise Decl. ¶ 10.)

Courts have held "[t]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002); *See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions and are familiar with the strengths and weaknesses of the claims and defenses. (Ex. 4, Ficzko Decl. ¶ 16;

Ex. 5, Wise Decl. ¶ 10.) With that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation and appeals, and the adequacy of the Settlement. (*Id.*) Thus, Class Counsel believe that the Settlement is certainly in the best interest of the Settlement Class. (Ex. 4, Ficzko Decl. ¶ 17; Ex. 5, Wise Decl. ¶ 11.) This factor therefore weighs in favor of final approval.

      **F.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This complex class action was resolved after almost three years of litigation. This period involved extensive research, analysis, investigation, the completion of written requests for documents and interrogatories, and a mediation involving the exchange of mediation statements as well as an all-day mediation. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement. (Ex. 4, Ficzko Decl. ¶ 16; Ex. 5, Wise Decl. ¶ 10.) Given the significant time and resources spent by the Parties exchanging information and advancing settlement negotiations, this final factor favors final approval of the Settlement.

    **VI.    CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court grant his Unopposed Motion for and Memorandum in Support of Final Approval of Class Action Settlement and enter the Proposed Final Approval Order, attached as Exhibit 2.

Date:  June 14, 2024                   Respectfully Submitted,

                                          */s/ Andrew C. Ficzko*

                                          Ryan F. Stephan
                                          James B. Zouras
                                          Andrew C. Ficzko
                                          **STEPHAN ZOURAS, LLC**
                                          222 West Adams Street

15

Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jazouras@stephanzouras.com
aficzko@stephanzouras.com

Brandon M. Wise
**Peiffer Wolf Carr Kane Conway & Wise,
LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
bwise@peifferwolf.com

**CLASS COUNSEL**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 14, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Andrew C. Ficzko*